[No. E032446. Fourth Dist., Div. Two. Feb. 28, 2003.]

WOODSIDE HOMES OF CALIFORNIA, INC., Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
C. I. FOGLER, JR., et al., Real Parties in Interest.

724

## COUNSEL

Cooksey, Toolen, Gage, Duffy & Woog, Griffith H. Hayes, Matthew S. Watson and Alexander T. Winsberg for Petitioner.

No appearance for Respondent.

Dicks & Coglianese, Christopher Coglianese and Charles R. Fenton for Real Parties in Interest.

## OPINION

**HOLLENHORST, Acting P. J.**—In this case we are asked to determine the enforceability of a clause requiring home buyers who sue the builder to submit the dispute to binding judicial reference. In contrast to the trial court, we find the provision enforceable, and grant the relief sought by petitioner.

### STATEMENT OF FACTS

Petitioner Woodside Homes of California, Inc. (Woodside) is a developer of home tracts. Real parties in interest (Buyers) purchased homes from petitioner's affiliate sales arm under standard contracts which required any lawsuit "relating to the condition, design or construction of any portion of the [purchased home]" to be submitted to judicial reference pursuant to Code of Civil Procedure sections 638, former subdivision 1, and 641 through 645.1. Among the more significant provisions for the conduct of the reference are the following: The referee is to be a retired judge or attorney with substantial experience in real estate matters; the parties shall be entitled to discovery, with the referee to supervise and enforce orders; a stenographic record of the trial is to be made, but will be confidential except as necessary for posthearing motions and appeals; the referee shall render a statement of decision with findings of fact and conclusions of law; and the decision may be entered as a judgment, *but* is also appealable.

The contracts also provide that "Seller shall not be required to participate in the judicial reference proceeding unless it is satisfied that all necessary

and appropriate parties will participate." The parties are to share costs and the referee's fees equally, "unless the referee orders otherwise." Each party shall remain responsible for their own attorneys' fees.

In reliance upon these provisions, Woodside moved to compel a reference. Although Buyers' complaint named only Woodside and Does, Woodside represented that the subcontractors on the project were all bound by agreements to participate in any reference of disputes related to their work.

Buyers objected on several grounds, but the general thrust of their argument was that the provision for mandatory judicial reference was unconscionable and unenforceable. In agreeing with Buyers, the trial court was particularly concerned with five provisions: confidentiality; compensation of the referee; the possibility that a mere attorney might be selected; Woodside's unilateral power to decline to participate; and the lack of provisions for mediation.[1] Woodside sought review.

## DISCUSSION

### *General Principles of Enforceability*

First, we must point out that this is *not* an arbitration case, and therefore not all authorities dealing with arbitration agreements are directly relevant. For example, one case on which Woodside particularly relied, *Basura v. U.S. Home Corp.* (2002) 98 Cal.App.4th 1205 [120 Cal.Rptr.2d 328] (*Basura*) involved the effect of the Federal Arbitration Act on Code of Civil Procedure section 1298.7, which is intended to preserve a home buyer's right to litigate disputes despite the fact that the sales contract contains an arbitration clause.[2] Because this case does not involve arbitration, neither the statute nor the federal act applies.[3]

---

[1]The court commented that the agreement required the use of a referee affiliated with "JAMS," but this was not correct. The agreement only requires the use of the *procedures* established by Judicial Arbitration and Mediation Services (JAMS) unless otherwise agreed.

[2]*Basura* held that because home construction and sales involved interstate commerce, federal law controlled and preempted the California statute. It therefore enforced the arbitration agreement. The opinion does not reflect that any argument was made that the agreements were unconscionable, which would be a defense to enforcement under federal law; the Federal Arbitration Act permits contracts for arbitration to be voided upon grounds that apply to *all* contracts. (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687 [116 S.Ct. 1652, 1656, 134 L.Ed.2d 902].) The problem with Code of Civil Procedure section 1298.7 is that it creates a special rule which invalidates *only* arbitration agreements.

[3]We are *not* unmindful of the argument that the statute expresses a legislative policy against requiring homebuyers to submit to *any* form of alternative dispute resolution. We do not find the argument dispositive because many of the potentially undesirable elements of arbitration

However, we recognize that a binding judicial reference is substantially similar to nonjudicial arbitration, and a similar approach is therefore justified in evaluating the enforceability of the provisions.

 California has historically had a "friendly policy" towards arbitration agreements. (*Keating v. Superior Court* (1982) 31 Cal.3d 584, 601 [183 Cal.Rptr. 360, 645 P.2d 1192], disapproved on other grounds *sub nom. Southland Corp. v. Keating* (1984) 465 U.S. 1 [104 S.Ct. 852, 79 L.Ed.2d 1]; see also *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97-98 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).) Such agreements are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) That is, California recognizes and approves of such agreements, but they are not given *special* consideration; rather, they are evaluated under the same standards as any other contract which a party seeks to avoid. (*Armendariz*, at pp. 126-127; *Bolter v. Superior Court* (2001) 87 Cal.App.4th 900, 906 [104 Cal.Rptr.2d 888].)

Although the "doctrine of unconscionability" was judicially created (see *Armendariz, supra,* 24 Cal.4th at p. 113), Civil Code section 1670.5 now provides a statutory basis for refusing to enforce a contract which the court finds "as a matter of law . . . to have been unconscionable at the time it was made. . . ." The crucial term, "unconscionable," is not defined, but the law has clearly established that the term has both a procedural and a substantive element. The former takes into consideration the parties' relative bargaining strength and the extent to which a provision is "hidden" or unexpected, while the substantive element requires terms that "shock the conscience" or at the least may be described as "harsh or oppressive." (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212-1213 [78 Cal.Rptr.2d 533].) Both elements must be present, but "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz*, at p. 114.) In the context of arbitration, California courts currently reflect considerable concern that arbitration not become an "instrument of injustice" when forced upon consumers. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 989 [64 Cal.Rptr.2d 843, 938 P.2d 903] (*Engalla*) (conc. opn. of Kennard, J.).)

It has been held that the party who prepared and submitted a contract containing unexpected or harsh terms has the burden of showing that the

are not present in the specific agreement here, such as the virtual nonreviewability of the decision even in cases of clear legal error. (See Code Civ. Proc., §§ 1286.2 & 1286.6; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 27-28 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Thus, we do not find the legislative distaste for arbitration (ineffectual as *Basura* found it to be in the circumstances) of substantial weight in the analysis of the provisions at issue here.

other party had notice of them (*Ellis v. McKinnon Broadcasting Co.* (1993) 18 Cal.App.4th 1796, 1804 [23 Cal.Rptr.2d 80]), but also that the party asserting unconscionability as a defense has the burden of establishing that condition. (*Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1738-1739 [22 Cal.Rptr.2d 781].) In the related context of arbitration, the party seeking to compel arbitration has the burden of showing the existence of a valid agreement, while the opposing party has the burden of proof with respect to any defense to enforcement. (*Engalla, supra,* 15 Cal.4th at p. 972.)

### Application to This Case

Because of its close similarity to this case, as well as due to its origin in another division of this court, we begin by reviewing the recent decision by Division One of this court in *Pardee Construction Co. v. Superior Court* (2002) 100 Cal.App.4th 1081 [123 Cal.Rptr.2d 288] (*Pardee*), which resulted in the *invalidation* of a clause requiring judicial reference of disputes in the same context of tract homes. In large part the contracts and circumstances were effectively equivalent to those in this case, and we will only note the differences.[4]

### A.

### Procedural Unconscionability

■ In *Pardee,* the homes were described by both sides and the court as "entry level" (*Pardee, supra,* 100 Cal.App.4th at p. 1084) and the court assumed that the buyers therefore had little bargaining power when dealing with the builder/developer. The court found, or assumed, that all of the 800 homes in the developments not only contained the judicial reference provisions, but that *none* of them had been successfully stricken by the buyers, who therefore had been shown to "[have] little choice."[5] (*Pardee*, at p. 1087.)

In this case, Woodside merely asserted that all of the plaintiffs in this action had initialed and accepted the provisions for judicial reference—there

---

[4]Buyers, in their return, argue that the agreement in this case is more objectionable than that in *Pardee* because it provides for a binding reference while the *Pardee* reference was nonbinding. We do not so read the opinion. If the reference was not binding, the discussion of the buyers' waiver of jury trial would have been pointless.

[5]In its opinion, the court noted that Pardee Construction alleged in its petition that every purchase agreement for the entire development contained the judicial reference provision, and thus acknowledged that no buyer struck it out. However, the opinion sheds no light on whether there was any evidence that any buyer *attempted* to strike it out but was told that this was not acceptable to the seller.

was no concession that *no* buyer had stricken them. Nor was there *any* evidence concerning any buyer's disagreement or attempt to reject the provisions. The homes ranged in price from $189,900 to $251,490, with only two of the 11 priced below $220,000. There was no evidence that this was "entry level" or "mid-level" or "upper level," and no evidence concerning the availability of similarly priced housing stock in the region. (Cf. *Armendariz, supra,* 24 Cal.4th at p. 115, in which the court felt able to state as a fact that "few employees are in a position to refuse a job because of an arbitration requirement.")

The opinion in *Pardee* describes the contracts' provisions for judicial reference as "buried in the form contracts" and "physically difficult to read as printed in dense, single-spaced capital letters." It also noted that the *caption* of the paragraph in question "did not explain the essence of the judicial reference provisions or otherwise convey anything meaningful to an entry-level purchaser." Finally, the court found it a "surprise component" that the contract made no mention of referee fees. (*Pardee, supra,* 100 Cal.App.4th at pp. 1089-1090.)

Although comparisons are difficult in that the *Pardee* opinion does not include a copy of the sales contract as an appendix, we do not think the contracts here can be described as misleading or hard to penetrate. Although the contracts are several pages long, and contain a great deal of small print, the Buyers were necessarily "made aware of the existence of [the judicial reference] provision" because they had to initial the paragraph separately. (*Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 361 [133 Cal.Rptr. 775, 84 A.L.R.3d 343], quoted in *Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1110 [63 Cal.Rptr.2d 261].) While the print of the provisions is small and does not stand out, immediately above the spaces for the buyers' initials is the large, bolded statement: "By initialing below, the parties acknowledge that they have read and understand the foregoing and accept that they are waiving their right to a jury trial." The caption—"JUDICIAL REFERENCE OF DISPUTES"—does not contain the arguably misleading addition present in *Pardee*: "TRIAL BY JUDGE IN COURT OF COMPETENT JURISDICTION."[6] And although it is true that the caption does not "explain the essence of the judicial reference provisions" (*Pardee, supra,* 100 Cal.App.4th at p. 1090), we do not believe that a *caption* is required to do so.[7] Significantly, perhaps the most important aspect of the judicial reference—the fact that it does not involve a jury—was

[6]The court found this misleading as it applied only if the judicial reference provisions were not enforced.

[7]The *Pardee* court appears to have assumed that purchasers of "entry level" homes would lack the necessary education, experience, or sophistication to understand the contracts. We

clearly and conspicuously set forth. The paragraph also notes that a reference will require fees for the referee, and sets out the presumptive method of apportionment.

Thus, the contracts here lack most, if not all, of the procedurally unconscionable factors found to exist in *Pardee*. Insofar as that court also relied on the circumstances of the sales, in this case there is no *evidence* of either de facto coercion, lack of choice, or ignorance and unsophistication on the part of the buyers, and we will not read anything additional into the record.

Even if we do assume an imbalance in bargaining power, and that Woodside, as the stronger party, presumably prepared the contracts with an eye to its own advantage, and even if we also assume that Woodside would not have countenanced the striking of the judicial reference provisions, the Buyers have nevertheless only shown a low level of procedural unconscionability because, as we have found above, the elements of surprise or, a fortiori, misrepresentation (see *Ellis v. McKinnon Broadcasting Co., supra*, 18 Cal.App.4th at p. 1804) were not present. In order to prevail, therefore, the Buyers must have established a *high* level of substantive unconscionability.

## B.

### *Substantive Unconscionability*

Again we will take *Pardee* as the starting point. In that case, the judicial reference necessarily included the waiver of the right to jury trial. The specific terms also prohibited the recovery of punitive damages. As noted above, there was no provision for the referee's fees, which left open the possibility that a buyer might be liable for *all* the fees. (*Pardee, supra*, 100 Cal.App.4th at pp. 1090-1092.) In this case, there is no limitation on damages while fees are to be shared evenly unless the referee determines otherwise.

The trial court here also was concerned about several other factors, some present (or possibly present) in *Pardee* and some not. The trial court disliked Woodside's power to "opt out," the lack of any provision for attorneys' fees, the possibility that a nonjudge could be selected,[8] the confidentiality of the transcript, and the lack of provisions for mediation. In our view, none of these issues is of substantial weight.

---

note that most of the named plaintiffs in the action had Hispanic surnames. While that is not true here, we would in any event be reluctant to draw similar conclusions merely from the price of the homes or the ethnicity of the buyers.

[8]In *Pardee* the referee was to be a retired superior court judge.

It is quite true that an agreement for alternative dispute resolution which is not binding upon the party insisting on it may be deemed unfair; there must be a " 'modicum of bilaterality.' " (*Armendariz, supra,* 24 Cal.4th at p. 117.) In this case, Woodside was not required to participate in the judicial reference unless it was "satisfied that all necessary and appropriate parties will participate." However, Woodside persuasively pointed out that it had required all (or virtually all) of its subcontractors to agree to participate in any judicial reference proceeding and that the provision was designed to ensure that the entire dispute could be resolved in one setting, whether by reference or trial.[9] The contract bound it to act in good faith in attempting to secure the participation of the subcontractors. Certainly there is nothing to indicate how or why Woodside might manipulate this provision to its advantage.

As for the possibility that an attorney who had never been a judge might be selected as a referee, the law governing references accepts such persons as qualified referees. (See Code Civ. Proc., §§ 638, 640-641.) We think the trial court's fear that an attorney referee might be unqualified to apply the rules of evidence "and that type of thing" was unjustified speculation. Equally speculative—and to a large extent rebutted by Woodside's counsel—was the trial court's concern that mediation or settlement conferences would be unavailable. There is no reason to make the illogical supposition that if both sides thought that informal attempts to resolve the dispute might be useful, they would not arrange such attempts, and Woodside in fact pointed this out. The contracts also specifically provided that the referee could require prehearing conferences.

As for the provision that both sides would bear their own attorneys' fees, this, as Woodside pointed out, merely restated the "American rule" of general applicability.[10] (Code Civ. Proc., § 1021; *City and County of San Francisco v. Sweet* (1995) 12 Cal.4th 105, 115, fn. 7 [48 Cal.Rptr.2d 42, 906 P.2d 1196].) It took nothing away from Buyers and was neither harsh nor oppressive.

Finally, the trial court was concerned with the provision that the transcript of the reference proceeding was to remain confidential unless needed for appeal. Assuming, arguendo, that Buyers correctly assert that this provision

[9]That is, if all subcontractors did not agree to the reference, the entire case would remain before the court.

[10]Code of Civil Procedure section 1021.1 does now provide for attorneys' fees in specified circumstances involving an offer of judgment. However, the statute, applicable only in Riverside County (*id.,* subd. (h)) was not enacted until 2001, after the execution of the contracts at issue here. As noted above, substantive unconscionability is evaluated as of the time the contract was executed.

is illegal, that does not make it unconscionable as to them. The factors which prohibit even the *parties* from agreeing to secret judicial proceedings bear on the extent to which the salutary effects of open proceedings serve the *public* interest. (See *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1200-1202 [86 Cal.Rptr.2d 778, 980 P.2d 337] et passim.) These concerns have nothing to say about the fairness or desirability of a secrecy provision with respect to the parties themselves, and we see nothing unreasonable or prejudicial about it.[11]

Furthermore, even if the provision is unenforceable, we agree with Woodside that it is severable. Civil Code section 1670.5 provides that even if a court finds a provision in a contract to be unconscionable, it has the option to enforce the remainder of the contract. This approach has been taken in the context of arbitration clauses containing objectionable terms. (See *Bolter v. Superior Court, supra,* 87 Cal.App.4th at p. 910, commenting that "[i]t is not necessary to throw the baby out with the bath water . . . .") If a challenge is in fact made to this provision as the matter proceeds towards resolution, or thereafter, severance would seem reasonable.

We are left, then, with the waiver of the right to jury trial and the issue of expense.

The contracts in this case, in contrast to those in *Pardee,* contain an express basic rule for the even division of the expenses of the judicial reference, with an additional provision authorizing the referee to direct payment at his or her discretion. Insofar as the *Pardee* court was concerned that the contract before it made no mention of such fees at all, Woodside's contract did at least indicate to Buyers that the process of judicial reference would involve expenses for the referee and thus the procedural element of surprise is not present. However, the underlying issue of fees requires some consideration. In *Pardee,* counsel indicated that a typical referee in San Diego charged $200 to $300 per hour. Here, the trial court speculated that costs could run up to $600 per hour. Either figure demonstrates the possibility for substantial expense, and an argument can be made that, compared with the "free" access to the court itself, a contract which imposes upon the weaker party the possibility of such exposure is unconscionable.

It is still frequently assumed, or stated without discussion, that arbitration (and, by analogy, a general judicial reference) provides economies both of

---

[11]On the other hand, we are not impressed by the argument, made by Woodside below, that the secrecy provision was for Buyers' benefit, e.g., by protecting them from potential embarrassment if their recovery was small. Our point is simply that a provision which favors one side is not substantively unconscionable if the advantage is completely collateral to the issues surrounding a fair resolution of the dispute.

time and expense. (See *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 832 [88 Cal.Rptr.2d 366, 982 P.2d 229]; *Engalla, supra,* 15 Cal.4th at p. 978.) However, as suggested in *Pardee,* the possibility that the fees of an arbitrator or referee may be burdensome especially to the "weaker party" has also been recognized. In fact, where the plaintiff is attempting to seek redress for the violation of a statutory or constitutional right, any provision requiring him to pay costs in excess of those incident to normal litigation is invalid. (See, e.g., *Armendariz, supra,* 24 Cal.4th at pp. 110-111.) Considerable attention has also been paid to the problem of *nonconsensual* judicial reference of, e.g., discovery disputes, where one party is genuinely unable to pay the costs. (See Code Civ. Proc., § 645.1 [apportionment of such fees]; *Taggares v. Superior Court* (1998) 62 Cal.App.4th 94 [72 Cal.Rptr.2d 387], and cases cited therein.) For Buyers to show that their *consensual* agreement is unconscionable, however, they must demonstrate at the least that the fees they are likely to pay are in fact greater than those which would accrue in litigation before the court. No such showing was made. Indeed, counsel for Woodside represented—without contradiction from Buyers—that he had substantial experience in complex construction litigation, and that it was routine for courts to appoint a nonconsensual special master or referee to handle at least all pretrial matters such as discovery and settlement negotiations. Thus, in such cases Buyers would also be potentially responsible for a share of any fees charged by the referee. No attempt was made to establish the likely length of a jury trial, or the additional attorneys' fees, if any, which litigation before the court would be likely to generate.[12]

Nor did Buyers establish that the probable additional expenses of a judicial reference, if any, would be impossible or unreasonably difficult for them to pay. (Cf. *Pardee, supra,* 100 Cal.App.4th at p. 1090, in which the court found it possible to assume that such expenses would constitute "heavy burdens for buyers of entry-level homes.") Their opposition to the motion by Woodside argued only that the provision for reference was unconscionable because it "den[ied]" them of their right of access to the courts. It may well be that Buyers' counsel is contractually obligated to "front" any such expenses, an arrangement noted as "commonplace" in *DeBlase v. Superior Court* (1996) 41 Cal.App.4th 1279, 1285 [49 Cal.Rptr.2d 229].[13] In short,

---

[12]The same point—the prevalence of at least partial reference in construction disputes—was conceded by both sides in *Pardee.* While that court took the point as indicating that a *general* reference would save little time, we look at it as evidence that the expenses would not be notably increased.

[13]The court also commented that in such a case, "an avowal of the litigant's indigence may be viewed as nothing more than a request that the court minimize counsel's out-of-pocket expenses." (*DeBlase v. Superior Court, supra,* 41 Cal.App.4th at p. 1285.) In *Taggares v. Superior Court,* the court criticized this statement insofar as it suggested that counsel should

the Buyers failed to produce any evidence that the decision to agree to judicial reference was not economically sound from their point of view.[14]

Finally, we turn to the issue of Buyers' waiver of their right to a jury trial. As we have discussed above, this waiver was *not* obtained by a "stealthy device" such as the burial of the provision near the end of 70 pages of text. (See *Villa Milano Homeowners Assn. v. Il Davorge* (2000) 84 Cal.App.4th 819, 829 [102 Cal.Rptr.2d 1].)[15] There is no question that such a waiver can be made. (*Villa Milano*, at p. 829.) In *Pardee*, the court found no evidence in the record that the buyers had gained anything in return for this waiver, because it was not persuaded that there would be any economies of time or expense. We have taken the approach that, based on the public policy favoring alternative dispute resolution (see *Armendariz, supra*, 24 Cal.4th 83, and *Keating v. Superior Court, supra*, 31 Cal.3d 584), we should assume that such economies exist unless proven otherwise. We also think it obvious that Buyers *did* get something in addition for their jury waiver—Woodside's matching waiver. This brings us to a final question, albeit not one directly addressed or raised by the parties.

Why have provisions for arbitration or similar methods of dispute resolution outside the courtroom become so popular in contracts drawn up by the party who is overwhelmingly likely to be the defendant if a dispute arises?[16] There are several possible reasons, some of which are perfectly neutral and

---

be prepared to pay the expenses of a reference which neither he nor his client had requested. (*Taggares v. Superior Court, supra*, 62 Cal.App.4th at p. 102.) This does not necessarily apply when the client *has* agreed to a reference. We do not know, of course, whether the agreement between Buyers and their counsel deals with the issue.

[14]We also note that the contracts at least raised the possibility that the referee would choose to apportion expenses primarily to the losing party. It could well be argued that construction defect cases are relatively straightforward in many respects, at least as between the buyer and the builder. Either the roof leaks, or it does not; if it does, the builder is very likely to be responsible. Unlike, for example, an automobile accident case, "leaky roof" and "cracked wall" cases do not involve the vagaries of memory and debatable issues of whether "A" had time to swerve, or "B" should have braked. To this extent a home buyer who brings a complaint in good faith can feel reasonably confident of prevailing, and thus also making a case for an apportionment of expenses primarily to the builder.

[15]In that case, the court noted that not only was the arbitration provision on pages 67-68 of a 70-page set of CC&R's, but the purchasers "most likely" received a "thick stack of additional documents" such as association bylaws and articles of incorporation, as well as the actual purchase documents. (*Villa Milano Homeowners Assn. v. Il Davorge, supra*, 84 Cal.App.4th at p. 829.) In the absence of evidence, we decline to speculate on what other documents Buyers may have been required to scrutinize along with the purchase agreements.

[16]Woodside, having received its money from Buyers (or their lenders), would have little reason to think it would ever initiate litigation against Buyers. Medical providers, such as that in *Engalla*, rarely sue their patients. Employers, such as that in *Armendariz*, rarely sue their employees. Franchisers, such as that in *Bolter v. Superior Court, supra*, 87 Cal.App.4th 900, are probably less likely to sue their franchisees than vice versa. Even when such suits *are*

operate evenhandedly; some may be stated more than one way, depending on one's philosophical bent. The "defendant in waiting" may believe that juries are unpredictable. It may believe that juries cannot be trusted with complicated cases, or that jurors may lose interest in a long case and return an ill-informed or arbitrary verdict. It may believe that juries are biased against "business." It may believe that a trained neutral trier of fact will make a fairer decision.[17]

We will take the simplest and, for Woodside, the starkest and least generous way of putting it: Businesses prefer to have consumer cases heard by a neutral adjudicator because they expect that, year in and year out, the plaintiffs' recovery will be *less than juries would award.* But even assuming that 1) this is why the provisions are inserted, and 2) that this belief is accurate, does that make it unconscionable to require the consumer/buyer to waive his right to a jury trial?

It does not. Nothing in the record before us suggests that a truly neutral decision maker chosen under the sales contracts will not return a *fair* decision, or that, if the decision is in favor of Buyers, the award will not represent *complete and reasonable compensation* for their damages. There is nothing "unconscionable" in requiring a party to a contract to give up the possibility of obtaining a windfall from a jury irresponsibly generous with someone else's money.[18]

The law of California provides that in a contract case, "the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, § 3300.) Similarly, "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Civ. Code, § 3333.) Buyers are entitled to such an award,

---

brought, they would be more likely to sound in the damages-limited field of contract than in tort. (One exception is the situation in which an employer sues a former employee for unfair competition or theft of trade secrets.) In virtually all cases, however, the party drafting the arbitration or reference clause has many times the available financial resources of the other—which means that it is a potentially desirable target. An employer dissatisfied with a slacker employee merely fires him or her; the disgruntled ex-employee is the one who sues.

[17]In an individual case, a party may elect a court trial for many reasons. A criminal defendant may fear that the inflammatory facts of the case would inevitably bias a jury. Any party may believe that a jury would be unsympathetic to his position because of his ethnicity, or that he would make a poor witness. Of course no such individualized determination was made here.

[18]Nor is the advantage wholly to Woodside. As we have noted just above, by insisting on judicial reference, Woodside gave up the chance, in any given case, of using any unprepossessing characteristics of the plaintiff as a negotiating or litigation tool.

whether from a jury or a referee. They are not entitled to more, and they have not been subject to harsh oppression by being required to submit their disputes to a neutral referee.

We do not purport to hold that *all* agreements for judicial reference are valid and enforceable; as did the court in *Pardee,* we have "narrowly tailored [our analysis] to this record, in particular to the parties' agreements." (*Pardee, supra,* 100 Cal.App.4th at p. 1086.) We do find that the agreements for judicial reference in this case are enforceable.[19]

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue as prayed. Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court,

---

[19]Woodside argues at some length that the provisions for judicial reference must be deemed *not* unconscionable because the real estate contracts were subject to review by the Department of Real Estate. (See Bus. & Prof. Code, § 11010 et seq.) Woodside also points out that regulations *permit* real estate contracts to include provisions for judicial reference. (See Cal. Code Regs., tit. 10, § 2791.8.) Finally, Woodside asserts that the department itself informs developers that, "The substance of the sales agreement is of prime importance in assessing whether purchasers are being dealt with fairly and within the law." (It does not provide the source of this statement, which may appear on the department's Web site.) Woodside's position is that 1) the department will not approve a provision which is not lawful, so 2) judicial reference agreements must be lawful.

It is for the courts to determine whether a provision is unconscionable, and we are not bound by a permissive regulation even if we were to assume that it was the result of deliberate consideration. We also note that the same regulation permits real estate contracts to contain arbitration clauses as well, despite the fact that the Legislature, in Code of Civil Procedure section 1298.7, has effectively emasculated such clauses with respect to tort claims. (See *Basura, supra,* 98 Cal.App.4th at pp. 1211-1212; *Villa Milano Homeowners Assn. v. Il Davorge, supra,* 84 Cal.App.4th at p. 830.)

In this context Woodside points out that in 1997, a superior court judge in San Francisco ruled that an arbitration clause was permissible "as long as [it] does not limit any right of action." This appears to have been based upon the belief that Code of Civil Procedure section 1298.7 only operated to ensure that buyers were not compelled to give up any type of claim, and could arbitrate any "cause of action" they might have against the developer. However, as *Basura* and *Villa Milano* make clear, the statute gives the homeowner the option of *refusing* to arbitrate and take his claims to court. (Of course, nothing prevents the home buyer from proceeding with arbitration if he so chooses, and to this extent a provision for arbitration might be considered valid, even if not enforceable by the developer.)

Finally, we note that the only "required contents" of a real estate purchase contract are the legal description, outstanding encumbrances, and "the terms of the contract." (Bus. & Prof. Code, § 11200.) Similarly, an application for a public report requires the developer to submit a copy of the proposed sales contract (§ 11010, subd. (b)(5)), but the statutes otherwise do not purport to govern the terms of such contracts. In our view the department's authority to micromanage the preparation of sales contracts through regulation is not clearly established, especially in an area of law rapidly evolving both through legislation and judicial decisions. For this reason as well we do not give the department's permission to sell great weight.

together with proof of service on all parties. Petitioner shall recover its costs on appeal.

McKinster J., and Richli J., concurred.