Filed 12/19/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| SALLY ANN HAYDON,<br><br>    Plaintiff and Respondent,<br>v.<br><br>ELEGANCE AT DUBLIN et al.,<br><br>    Defendants and Appellants. | A168767<br><br>(Alameda County<br>Super. Ct. No. 23CV029215) |

Defendants Elegance at Dublin, Elegance Living, LLC, Elegance Living Employer, LLC, Capital Health Group, LLC, Marissa Espinoza, and Amador Valley I, LLC (collectively, defendants) appeal from an order denying their motion to compel arbitration of a lawsuit filed by Sally Ann Haydon, a former resident at the Elegance at Dublin residential care facility for the elderly (facility).[1]  Defendants contend the trial court erred by concluding the parties' arbitration agreement was unconscionable and by failing to sever any unconscionable provisions and enforce the rest of the agreement.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Haydon is 74 years old and has dementia.  She lived at the facility for a few days from December 29, 2022 until January 1, 2023.

---

[1]    Defendant Amador Valley I, LLC joins the opening brief filed by the other defendants.  We also grant Amador's joinder in the other defendants' reply brief.

### The Arbitration Clause

Before moving to the facility, Haydon signed a Residence and Care Agreement (agreement) that included an arbitration clause. The clause was in the middle of a document over 40 pages long, which included the agreement, several appendices, and other materials. The arbitration clause was the last of over 20 unrelated "miscellaneous" provisions at the end of the agreement. The clause had its own signature block, immediately followed by a signature block for the agreement as a whole. Neither signature block was clearly identified or set off from the dense surrounding text. And both signature blocks — along with several others interspersed throughout the document — included multiple signature lines (for example, for two residents, a resident representative, and/or a facility representative).

The arbitration clause provided in pertinent part that, "[b]y signing below, you agree that any and all claims and disputes arising from or related to this [a]greement or to your residency, care or services at the [facility] . . . shall be resolved by submission to neutral, binding arbitration in accordance with the Federal Arbitration Act . . . ." "The arbitration shall be administered by the Judicial Arbitration and Mediation Services ('JAMS') . . . ." The arbitration provision required the parties to bear their own costs and fees and prohibited them from disclosing "the existence, content, or results of the arbitration without the prior written consent of the parties . . . ." In bold text, the arbitration clause explained that residents could withdraw from the clause by giving written notice within 30 days of signing the agreement, and cautioned that "[b]y signing below, you warrant that this paragraph has been explained to you, that you understand its significance, that you voluntarily agree to be bound by it, and that you

understand that agreeing to arbitration is not a condition of admission to the [facility]."

### The Proceedings Below

In March 2023, Haydon sued defendants under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.; Elder Abuse Act) and for negligence, assault, and battery. The gravamen of the complaint was that Haydon was sexually assaulted by a caregiver the morning of her last day at the facility and that defendants failed to provide for her safety.

Defendants moved to compel arbitration. They argued that the arbitration provision applied to Haydon's claims, and each of the defendants was entitled to enforce it. Defendants urged that the arbitration provision was not unconscionable and, in the alternative, that the trial court could and should sever any unconscionable clause from the provision and enforce the remainder. They filed a copy of the agreement but offered no evidence of the circumstances surrounding its execution.

In opposition, Haydon claimed she lacked capacity to agree to arbitration and that the arbitration provision was unconscionable. In a supporting declaration, Haydon's daughter explained that she communicated with the facility on her mother's behalf throughout the admission process and gave notice in October 2022 that her mother had "cognitive disorder and asphasia [*sic*]," a loss of ability to understand or express speech. According to Haydon's daughter, the facility salesperson "adamantly pushed" to finalize Haydon's admission before he left the facility to take another job and "made it clear that if [Haydon] signed up with him," she would get "a better rate." This was important because Haydon lived on a fixed income and had no retirement savings. Haydon's daughter claimed the salesperson emailed the

3

agreement "on 11/22/23" (date is erroneous as Haydon apparently signed the agreement on November 20, 2022) and asked her "multiple times when [Haydon] could get it back to him." He "expressed . . . that he was in a time crunch to get all the paperwork done before his last day so [Haydon] could get the rate she could afford." Haydon's daughter stated that "[n]o one from the facility explained the . . . [a]greement, including the arbitration clause," to Haydon, and no one from the facility was with Haydon when she signed it. Meanwhile, Haydon "was declining in her abilities" and "could no longer drive." She "felt incredible pressure and duress to sign all of the documents by [the salesperson's] deadline."

In reply, defendants offered a declaration by the salesperson who interacted with Haydon's daughter. He denied saying the discount would be withdrawn if Haydon did not sign the agreement before the end of his employment. The salesperson claimed Haydon "had approximately two weeks" to review the agreement before she signed and returned it.

The trial court issued a tentative ruling denying defendants' motion on the grounds that the arbitration provision was unconscionable. The court found a "high degree of procedural unconscionability" because Haydon "was presented with a 44-page prolix [a]greement to sign under time pressure," and the agreement was "formatted and drafted in a difficult-to-understand manner." The tentative ruling credited the testimony via declaration of Haydon's daughter over that of the salesperson, reasoning that the assertion that Haydon had two weeks to review the documents was not credible because the salesperson failed to "provide the specific dates on which he provided the [a]greement to [Haydon] and when and how" the executed agreement was returned to him. The court also found the agreement and arbitration clause were "set in what appear[ed] to be small 8 or 10-point

4

single-spaced text" and the multiple signature blocks were "confusing."  The court found that "[t]he odd manner in which [Haydon] signed the main signature block implie[d] that she was in fact confused by this."  The court also found a "high degree of substantive unconscionability" based on three components of the arbitration provision and the applicable JAMS rules.  It concluded the arbitration provision could not be enforced due to unconscionability and declined to address the other issues raised by the parties.

After issuing its tentative ruling, the trial court continued the hearing on defendants' motion.  On the day before the hearing, in the afternoon or evening, defendants' counsel filed a supplemental declaration attaching what he claimed were emails between Haydon's daughter and the salesperson.  Counsel argued the emails contradicted statements made by Haydon's daughter and established the agreement was provided "more than two weeks before it was signed and more than three weeks before it was returned."  At the hearing, Haydon's counsel objected to the late-filed declaration, claiming defendants had refused to provide discovery concerning the execution of the arbitration clause and wanted "a second bite at the apple" after receiving the court's tentative ruling.  After argument from both sides, the trial court decided not to consider the declaration, explaining that defendants should not "benefit" because the court "for its own reasons continued the hearing by [a] week."  The court then heard argument on the merits of defendants' motion, adopted the tentative ruling, and issued an order denying the motion that same day.  Defendants did not request a statement of decision.

This timely appeal followed.  We expedited the appeal pursuant to Code of Civil Procedure section 1294.4 and California Rules of Court, rule 8.710 et seq.

5

Defendants challenge the trial court's order on several grounds, which we address in turn.

## I. Delegation Provision

Defendants argue the trial court erred by failing to address their argument that a delegation provision required the arbitrator to determine unconscionability.

This argument is forfeited because defendants did not raise it in their motion to compel arbitration. (See *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 770 [argument regarding delegation provision forfeited where first raised in reply].) Instead, in their motion defendants asked the trial court to determine that the arbitration provision was not unconscionable. (*Id.* at pp. 770–771.) In her opposition, Haydon noted it would be improper to raise the delegation provision in reply and argued it was unenforceable in any case. Only then did defendants claim the provision required the arbitrator to decide unconscionability. And in their reply, they provided no reasoned argument to support this assertion, merely responding to Haydon's claim that the provision was unenforceable. (*Id.* at p. 770.) They take the same approach on appeal.

We therefore decline to consider this issue on the merits. (See *Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1072–1073 [failure to preserve argument concerning delegation provision in the trial court was compounded by failure to provide reasoned argument on appeal].)

## II. Unconscionability

Unconscionability has both a procedural and a substantive element. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).) Procedural unconscionability " 'addresses the circumstances of contract negotiation and

formation, focusing on oppression or surprise due to unequal bargaining power.'" (*Ibid*.) "'Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.'" (*Ibid*.) Both elements must be proven, but they are evaluated on a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required" to find it unenforceable, "and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

On appeal, "[w]e review the trial court's findings of disputed fact for substantial evidence; we review its finding of unconscionability based on those facts de novo." (*Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1047.) If material facts are in dispute, we presume the court found every fact and drew every permissible inference necessary to support its order. (*Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 630.)

Defendants claim the arbitration provision was neither procedurally nor substantively unconscionable.

## A. Procedural Unconscionability

Defendants insist the arbitration clause was not procedurally unconscionable because there was no evidence of oppression or surprise and the clause was not adhesive. In assessing procedural unconscionability, courts ask "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." (*OTO, supra*, 8 Cal.5th at p. 126.) Oppression occurs " ' " 'where a contract involves lack of negotiation and meaningful choice' " ' " and surprise involves the extent to which " ' " 'the allegedly unconscionable provision is hidden within a prolix printed form.' " ' " (*Ibid*.)

Here, the trial court found "a high degree of procedural unconscionability" based on both oppression and surprise. This conclusion is well-supported by the agreement itself and the declaration of Haydon's daughter, which the court credited.[2]

Haydon's daughter explained that her mother was under enormous pressure to sign the agreement and arbitration provision because her condition was declining, she had limited financial resources, and the facility was offering a discount contingent on her signing up quickly. A similar type of oppression was discussed in *Dougherty v. Roseville Heritage Partners* (2020) 47 Cal.App.5th 93, 97, 100 (*Dougherty*), which deemed unconscionable an arbitration agreement contained within admissions documents to an elder residential care facility. While in *Dougherty* the prospective resident needed to find a facility that day (*id.* at pp. 103–104), here, the evidence supports the court's conclusion that a similarly vulnerable Haydon was subjected to a financial "pressure tactic" that was oppressive.

The trial court's finding of surprise is also supported by substantial evidence. Haydon was presented with a long, dense agreement interspersed with several confusing signature blocks — some of which she filled out incorrectly. As in *Dougherty*, the arbitration provision was "buried within the packet" Haydon was pressured to sign. (*Dougherty, supra,* 47 Cal.App.5th at p. 104.) And worse, the provision was not presented in a separate document (*id.* at p. 100) or even in a separate section, but as the last of over 20 unrelated "miscellaneous" provisions spanning several pages at the end of the agreement. These circumstances reflect a high degree of surprise. And

_____

[2] While the court also drew a negative inference based on the lack of detail provided by the salesperson in his declaration, this was unnecessary to its ruling. And the court's order did not include or depend on a finding that the salesperson emailed the agreement on a particular date.

defendants' failure to alert Haydon to relevant provisions of the JAMS rules, such as the discovery limitations discussed below, is another factor supporting the trial court's finding of unconscionability based on surprise. (*Id.* at p. 104.)

Defendants contend the arbitration clause is not procedurally unconscionable because it was not adhesive given the disclaimer that it was not a condition of admission and the 30-day opt-out provision. As defendants acknowledge, adhesion is not a prerequisite to procedural unconscionability. (*Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1410.) Even where an arbitration provision allows a party to opt out, there may be procedural unconscionability if there is not "an authentic informed choice" to make that decision. (See *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 470–472, fn. 10, abrogated on other grounds as stated in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 359–360.) Here, we presume the trial court found Haydon did not have an authentic informed choice to reject the arbitration clause given its confusing presentation, the failure of anyone at the facility to explain the clause or the opt-out procedure to her, and the temporal and financial pressure she experienced in her vulnerable state.

Finally, defendants contend the trial court abused its discretion by failing to consider the supplemental declaration they filed after the court issued a tentative ruling and on the eve of the continued hearing on their motion. We disagree. A court has broad discretion to accept or reject late-filed papers, and the general rule is that new evidence is not permitted even on reply. (*Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186, 1210.) Here, the court considered defendants' reply evidence, and did not abuse its discretion when it drew the line at additional new evidence offered well past both the

9

reply deadline and the original hearing date. (*Ibid.* [no abuse of discretion where court denied request to supplement the record filed the day motion to compel arbitration was heard].)[3]

In sum, the circumstances surrounding Haydon's execution of the arbitration provision reflect a high degree of procedural unconscionability. "Under the sliding scale approach, only a low level of substantive unconscionability is therefore required to render the arbitration agreement unenforceable." (*Dougherty, supra,* 47 Cal.App.5th at p. 104.)

### B.    Substantive Unconscionability

The trial court found the arbitration clause and applicable JAMS rules had three substantively unconscionable components. Defendants disagree on all points.

Substantive unconscionability arises when a contract imposes unduly harsh or one-sided results. (*Armendariz, supra*, 24 Cal.4th at p. 114.) Mutuality is the paramount consideration. (*Gostev v. Skillz Platform, Inc., supra*, 88 Cal.App.5th at p. 1056.) Beyond that, "courts often look to whether the agreement meets a minimum level of fairness based on the factors set forth in *Armendariz*." (*Davis v. Kozak* (2020) 53 Cal.App.5th 897, 910 (*Davis*).) These include whether the agreement provides for adequate

---

[3]    To the extent the trial court erred by failing to document its ruling in the "minutes or order" (Cal. Rules of Court, rule 3.1300(d)), defendants were not prejudiced. (See *Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) The court heard and considered argument about the new evidence and made its ruling and its reasoning clear, as reflected in the reporter's transcript.

discovery and imposes unreasonable costs as a condition of access to the arbitration forum.  (See *Armendariz, supra*, 24 Cal.4th at p. 102.)[4]

The trial court found a confidentiality provision barring the parties from " 'disclos[ing] the existence, content, or results of the arbitration' " was unconscionable.  We agree.  Another division of this court has explained that such a clause would restrict the plaintiff from gathering information informally, increasing his or her costs unnecessarily and "defeat[ing] the purpose of using arbitration as a simpler, more time-effective forum for resolving disputes." (*Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1066.)  And requiring an elder abuse action like this one to be "kept secret" unreasonably favors defendants to the detriment of those "seeking to vindicate unwaivable statutory rights and may discourage potential plaintiffs" from bringing such cases.  (*Id.* at pp. 1066–1067 [addressing employment discrimination action]; cf. *Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, 1255 (*Murrey*) [addressing sexual harassment action].)  These concerns are not addressed in the cases cited by defendants, which considered narrower provisions requiring only the proceedings themselves to remain confidential.  (See *Woodside Homes of Cal., Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 731; *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 408.)

Defendants protest that authorities disapproving confidential arbitration in the employment context express concern with a " ' "repeat

---

[4] In *Armendariz*, our high court adopted minimum requirements for arbitration agreements that impair the exercise of unwaivable statutory rights enacted for a public purpose. (*Armendariz, supra*, 24 Cal.4th at pp. 99–101.)  Haydon's claim under the Elder Abuse Act involves statutory rights of this nature, which defendants appear to concede.  (See *Dougherty, supra,* 47 Cal.App.5th at p. 106; *Bickel v. Sunrise Assisted Living* (2012) 206 Cal.App.4th 1, 12.)

11

player" effect' " not present in our case. (*Murrey, supra,* 87 Cal.App.5th at p. 1254.) We are not persuaded. While defendants attempt to dismiss Haydon's alleged abuse as an isolated incident, the Legislature has recognized that elders are particularly vulnerable to abuse by caretakers. (Welf. & Inst. Code, § 15600, subds. (b), (d).) There is an obvious risk that such abuse could occur at an elder residential care facility (see *Dougherty, supra,* 47 Cal.App.5th at p. 106) and that it could reoccur if kept secret. As in the employment context, confidential arbitration of claims like Haydon's " ' "tilt[s] the scales of justice" ' " against potential victims of abuse " ' "by denying [them] access to any information about other claims" ' " against the facility. (*Murrey, supra,* 87 Cal.App.5th at p. 1254.) Such a requirement is at odds with the Legislature's declaration that "confidential settlement agreements are disfavored" in actions involving violations of the Elder Abuse Act. (Code Civ. Proc., § 2017.310, subd. (a).) The confidentiality provision is unconscionable to a high degree.

The trial court also found unconscionable the limitations on discovery under the applicable JAMS rules, and we presume it made the findings required to support that conclusion. "In striking the appropriate balance between the desired simplicity of limited discovery and [plaintiffs'] statutory rights, courts assess the amount of default discovery permitted under the arbitration agreement, the standard for obtaining additional discovery, and whether the plaintiffs have demonstrated that the discovery limitations will prevent them from adequately arbitrating their statutory claims." (*Davis, supra,* 53 Cal.App.5th at pp. 910–911.) The JAMS rules provide for only a single deposition absent a determination by the arbitrator that additional depositions are necessary and do not provide for interrogatories or requests

12

for admission.[5] Particularly when combined with the confidentiality provision, these restrictions "run the risk of frustrating plaintiffs' statutory rights under the [Elder Abuse] Act," which requires plaintiffs to prove their claims by clear and convincing evidence. (*Dougherty, supra,* 47 Cal.App.5th at p. 106; see also *Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 724–730 [restrictions on informal discovery and low default discovery provisions were unconscionable].) While courts have approved discovery restrictions akin to these in other contexts, the heightened standard of proof for elder abuse claims and the obstruction of informal discovery tip the balance here.

Finally, the trial court found unconscionable the requirement that parties bear their own costs and fees in connection with the arbitration, and this finding is supported by substantial evidence. In consumer cases, arbitration provisions that impose fees and costs that "in fact would be unaffordable or would have a substantial deterrent effect" in the plaintiff's case are unconscionable.[6] (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 920.) The trial court found that "JAMS charges up to $10,000.00 per day for a single-arbitrator arbitration" and this would be unaffordable for Haydon, who "is on Social Security and has no retirement funds." Defendants contend that although the arbitration provision "requires the parties to split arbitration fees, in reality Ms. Haydon would only pay a $250

---

[5] We take judicial notice of Rule 17 of the JAMS Comprehensive Arbitration Rules & Procedures, effective June 1, 2021. Although no party filed a request for judicial notice of this rule, both sides raised it to the trial court and there appears to be no dispute concerning its content or its application here. We afforded the parties an opportunity to present information relevant to this issue during oral argument.

[6] We assume without deciding that this standard applies here.

filing fee" per the fee schedule posted to the JAMS web site. But they did not make this claim below and have therefore forfeited it. Moreover, the trial court relied on uncontradicted evidence that JAMS recently billed large amounts to an elder abuse plaintiff in a similar case. We decline to take judicial notice of supposedly contrary facts (which defendants have not requested) based on web pages that were not before the trial court. (See *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325–326.)

The unconscionable provisions identified by the trial court are enough to make the arbitration clause unenforceable under the sliding scale approach.

### C.    Severability

Defendants contend the trial court erred by failing to address whether any unconscionable components could be severed from the arbitration provision and by failing to sever such components. When unconscionability is shown, the trial court has discretion to "refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).) We review the trial court's decision for abuse of discretion. (*Armendariz, supra*, 24 Cal.4th at p. 124.)

*Armendariz* observed that where an "arbitration agreement contains more than one unlawful provision," this may "indicate a systematic effort to impose arbitration . . . as an inferior forum that works to the [drafting party's] advantage" and may justify a finding "that the arbitration agreement is permeated by an unlawful purpose." (*Armendariz, supra,* 24 Cal.4th at p. 124.) We presume the trial court found the provision here was permeated by unconscionability, and we see no abuse of discretion in that finding. (See

14

*Davis, supra,* 53 Cal.App.5th at p. 918; *Dougherty, supra,* 47 Cal.App.5th at p. 107.) Defendants cite no authority showing that the provision's severability clause somehow divested the court of its discretion in this regard. Finally, while defendants now say they are willing to pay Haydon's arbitration fees, this "does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy." (*Armendariz, supra,* 24 Cal.4th at p. 125.) The trial court was not required to enforce an agreement "permeated by unconscionability" by accepting defendants' after-the-fact offer to modify it. (*Id.* at p. 126.)

In sum, the trial court appropriately determined that the arbitration provision was unenforceable due to unconscionability. We therefore need not reach Haydon's alternative arguments in support of the trial court's order.

**DISPOSITION**

The order denying defendants' motion to compel arbitration is affirmed. Haydon is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Rodríguez, J.


A168767/*Haydon v. Elegance At Dublin, et al.*

16

Trial Court:        Alameda County Superior Court

Trial Judge:       Hon. Julia Spain

Counsel:           Stebner Gertler Guadagni & Kawamoto, Katheryn Stebner, Karman Guadagni, Deena Zacharin, and Kelsey Craven; Needham Kepner & Fish, Kirsten Fish, for Plaintiff and Respondent.

Hanson Bridgett, Lori Ferguson, Stefan Chacon, Patrick Burns, and Madeline Anguiano, for Defendants and Appellants Elegance At Dublin et. al.

Perry, Johnson, Anderson, Miller & Moskowitz, David Beach and Sarah Jane Truong for Joinder Defendant and Appellants Amador Valley I, LLC.