[No. B151131. Second Dist., Div. Three. May 31, 2002.]

EDWARD D. BASURA, JR., et al., Plaintiffs and Respondents, v. U.S. HOME CORPORATION, Defendant and Appellant.

**COUNSEL**

Cox, Castle & Nicholson, Timothy M. Truax and Joanna C. Huchting for Defendant and Appellant.

Law Offices of Freeman & Freeman and Matthew C. Freeman for Plaintiffs and Respondents.

**OPINION**

**KLEIN, P. J.**—Defendant and appellant U.S. Home Corporation (Home) appeals an order denying its petition to compel arbitration of an action

brought by plaintiffs and respondents Edward D. Basura, Jr. et al. (collectively plaintiffs or buyers).[1,2]

The issues presented are (1) the effect of Home's failure to initial the arbitration clause in the sales agreements as to certain buyers; (2) as to those arbitration agreements which were bilaterally executed, the enforceability of said agreements in view of section 1298.7, which permits a purchaser to sue for construction defects despite having signed an agreement containing an arbitration clause; and (3) whether section 1298.7 is preempted herein by the Federal Arbitration Act (FAA) (9 U.S.C. § 2).

We conclude section 1298.7 is preempted by the FAA because the undisputed facts indicate the instant agreements involve interstate commerce. Therefore, plaintiffs cannot invoke section 1298.7 to avoid the arbitration agreements.

With respect to 28 plaintiffs as to whom Home did not initial the arbitration clauses, the trial court is directed to conduct a factual inquiry on remand to determine whether Home intended to be bound by arbitration, notwithstanding its failure to initial all the arbitration clauses.

Therefore, the order denying the petition to compel arbitration is reversed with directions.

FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises out of alleged design and construction defects in residential homes located in Palmdale. There are more than 60 plaintiffs in this action. Some of the plaintiffs purchased their homes directly from Home, while others are secondary buyers. Plaintiffs and respondents herein are 48 individuals who acquired their properties directly from Home.

The contracts between Home and buyers herein are form sales agreements for the conveyance of residential real property. Paragraph 14 of the standard

---

[1] An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).)

All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[2] As reflected in the order denying the petition to compel arbitration, the plaintiffs and respondents herein are: J. Alexander, E. Basura, M. Basura, W. Dugan, M. Dugan, C. Floyd, S. Floyd, P. Fox, N. Fox, G. Javier, W. Hidalgo, D. Merrill, J. Merrill, J. Moshier, J. Mumolo, D. Mumolo, D. Thomas, K. Thomas, J. Vliem, K. Vliem, G. Berumen, D. Donahue, R. Foster, L. Foster, H. Hart, F. Hernandez, D. Hogan, M. Hogan, D. Jaureguy, L. Jaureguy, Ruth Klinsky, Ronald Klinsky, A. Lefeele, J. Medina, E. Medina, E. Myers, V. Myers, J. Ptacnik, R. Sandoval, S. Sandoval, R. Swanson, R. Salas, Scott Taylor, Sandra Taylor, G. Voelkel, B. Whitley, D. Witt, and H. Witt.

contract is an arbitration clause, with spaces to be initialed by the buyer and seller in order to make the arbitration clause a part of the contract.[3]

All the plaintiffs herein initialed the arbitration clauses in their contracts. However, as to 28 of the plaintiffs, Home failed to initial the arbitration clause.

The homes developed various problems, including cracked foundation slabs. Plaintiffs initially filed suit in federal court, but dismissed that action pursuant to a tolling and cooperation agreement wherein the parties attempted to mediate their dispute, to no avail.

On November 21, 2000, plaintiffs filed this action against Home in Los Angeles Superior Court.

1. *Home's petition to compel arbitration.*

On April 6, 2001, Home filed a petition to compel arbitration of plaintiffs' claims. Home contended it had binding arbitration agreements with plaintiffs, and sought an order compelling plaintiffs to arbitrate their claims.

In opposition, plaintiffs contended the arbitration clause was not enforceable if either party failed to initial the arbitration clause; and in any event, section 1298.7 permits a purchaser to pursue a construction defect case in court even if the purchaser signed an agreement to convey real property containing an arbitration clause. Plaintiffs further argued that the FAA does not preempt section 1298.7 because the subject real estate purchase agreements did not involve interstate commerce.

Home, in turn, filed reply declarations to establish the agreements in fact involved interstate commerce.

2. *Trial court's ruling.*

On May 7, 2001, the matter came on for hearing. The trial court denied Home's petition to compel arbitration, ruling as follows:

"1. The Petition to Compel J. ALEXANDER, E. BASURA, M. BASURA, W. DUGAN, M. DUGAN, C. FLOYD, S. FLOYD, P. FOX, N. FOX, G. JAVIER, W. HIDALGO, D. MERRILL, J. MERRILL, J. MOSHIER, J. MUMOLO, D. MUMOLO,

---

[3]Paragraph 14 states in relevant part: *"By initialing in the space below you are agreeing* to have any dispute arising out of the matters included in the 'arbitration of disputes' provision decided by neutral arbitration as provided by California law and you are giving up any rights you might possess to have the dispute litigated in a court or jury trial."

DERRICK THOMAS, K. THOMAS, J. VLIEM, and K. VLIEM, is denied. [Code Civ. Proc., § 1298.7; *Villa Milano Homeowners Assn. v. Il Davorge* (2000) 84 Cal.App.4th 819 [102 Cal.Rptr.2d 1]].[4]

"2. Plaintiffs [G.] BERUMEN, D. DONAHUE, R. FOSTER, L. FOSTER, H. HART, F. HERNANDEZ, D. HOGAN, M. HOGAN, D. JAUREG[UY], L. JAU-REG[UY], RUTH KLINSKY, RONALD KLINSKY, A. LEFEELE, J. MEDINA, E. MEDINA, E. MYERS, V. MYERS, [J.] PTACNIK, R. SANDOVAL, S. SANDOVAL, R. SWANSON, R. SALAS, SCOTT TAYLOR, SANDRA TAYLOR, G. VOELKEL, B. WHITLEY, D. WITT, and H. WITT also cannot be compelled to arbitrate under [Code Civ. Proc.,] § 1298.7.[5] In addition, the arbitration provisions contained within the contracts of those plaintiffs are unenforceable because there is no agreement to arbitrate. See *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 357 [72 Cal.Rptr.2d 598]; *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83, 91 [80 Cal.Rptr.2d 147].

"3. The Motion to Stay the Proceedings is DENIED. [Code Civ. Proc., § 1281.4]"[6]

Home filed a timely notice of appeal from the order.

## CONTENTIONS

Home contends the trial court was required to order the buyers to arbitrate the matter because all of the buyers had consented to arbitration; the trial court erred as a matter of law in holding that section 1298.7 completely forecloses arbitration of construction defect claims; irrespective of whether section 1298.7 precludes arbitration of construction defect claims, section 1298.7 is preempted by the FAA because the contracts at issue involve interstate commerce; and the trial court's statutory interpretation and the application of the FAA to Home's undisputed evidence of interstate commerce transactions are subject to de novo review.

## DISCUSSION

1. *Standard of appellate review.*

The interpretation of section 1298.7 and the FAA presents questions of law for our de novo review. (*California Teachers Assn. v. San Diego*

---

[4]The 20 plaintiffs named in paragraph 1 of the order are referred to hereinafter as the Group One plaintiffs.

[5]The 28 plaintiffs named in paragraph 2 of the order shall be referred to as the Group Two plaintiffs.

[6]Although the trial court did not make an express ruling on the federal preemption issue, implicit in the trial court's denial of Home's petition to compel arbitration was a rejection of Home's reliance on the FAA.

*Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) Further, where the pertinent facts are undisputed, the issue of whether the transactions involved interstate commerce so as to implicate the FAA is likewise a question of law, subject to de novo review on appeal. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

2. *Plaintiffs' reliance on section 1298.7 is unavailing; the FAA preempts section 1298.7 herein because the instant agreements involve interstate commerce.*

   a. *Overview of the statutory scheme contained in section 1298 et seq.*

Section 1298 through 1298.8, pertaining to real estate contract arbitration, were enacted in 1988 by Assembly Bill No. 1240 (1987-1988 Reg. Sess.). (Stats. 1988, ch. 881, § 1; pp. 2820-2822.) "In these provisions, the Legislature has addressed the form, content, and effect of arbitration clauses contained in real property sales documentation. Specifically, . . . section 1298 requires arbitration provisions contained in contracts to convey real property, including marketing contracts, deposit receipts, real property sales contracts, leases coupled with options to purchase, and ground leases coupled with improvements, to meet certain requirements. An arbitration clause must be clearly titled 'ARBITRATION OF DISPUTES,' meet certain print size and capitalization requirements, and contain a prominent notice provision as set forth in section 1298. (Code Civ. Proc., § 1298, subds. (a) & (c).) The notice provision must be initialed by the parties if they agree to arbitration. (Code Civ. Proc., § 1298, subd. (c).)" (*Villa Milano Homeowners Assn. v. Il Davorge, supra,* 84 Cal.App.4th at pp. 829-830, review den.)

   b. *Section 1298.7 permits purchaser to sue for construction defects, despite having signed an arbitration clause.*

The pertinent provision for our purposes is section 1298.7, which states: "In the event an arbitration provision is included in a contract or agreement covered by this title [sections 1298-1298.8], it shall not preclude or limit any right of action for bodily injury or wrongful death, or any right of action to which Section 337.1 or 337.15 is applicable."[7]

■ With respect to the impact of section 1298.7, *Villa Milano* explained: "[S]ection 1298.7 . . . provides that even when an arbitration provision is included in an agreement to convey real property, 'it shall not preclude or limit . . . any right of action to which . . . Section 337.1 or 337.15 is applicable.' . . . [S]ections 337.1 and 337.15 pertain to litigation to recover

---

[7]Sections 337.1 and 337.15 pertain to litigation to recover damages for construction and design defects. (*Villa Milano Homeowners Assn. v. Il Davorge, supra,* 84 Cal.App.4th at p. 830.)

damages for construction and design defects. *In other words, the net effect of section 1298.7 is to permit a purchaser to pursue a construction and design defect action against the developer in court, even if the purchaser signed an agreement to convey real property containing an arbitration clause.* [Citation.]" (*Villa Milano Homeowners Assn. v. Il Davorge, supra,* 84 Cal.App.4th at p. 830, italics added, fns. omitted.)

■ Although section 1298.7 would appear to enable plaintiffs to avoid their arbitration agreements with Home, the issue remains as to whether section 1298.7 is preempted by the FAA.

    c. *The FAA prohibits courts from invalidating arbitration agreements under state laws applicable only to arbitration provisions.*

In *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 683 [116 S.Ct. 1652, 1654, 134 L.Ed.2d 902], the United States Supreme Court held the FAA preempted a Montana statute declaring an arbitration clause unenforceable unless notice that the contract is subject to arbitration is typed on the first page of the contract in underlined capital letters. The Supreme Court noted section 2 of the FAA provides that written provisions for arbitration " 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " (517 U.S. at p. 686 [116 S.Ct. at p. 1656], italics omitted, quoting 9 U.S.C. § 2.) The high court reaffirmed its earlier rulings that "the text of § 2 declares that state law may be applied 'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' [Citation.] Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. [Citations]. [¶] *Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions . . . .* Montana's [arbitration notice statute] directly conflicts with § 2 of the FAA because the State's law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. The FAA thus displaces the Montana statute with respect to arbitration agreements covered by the Act." (517 U.S. at pp. 686-687 [116 S.Ct. at p. 1656], italics added, original italics omitted.)

Here, section 1298.7 directly conflicts with section 2 of the FAA because the California statute is a state law applicable only to arbitration agreements, allowing a purchaser to pursue a construction and design defect action against a developer in court, despite having signed an agreement to convey real property containing an arbitration clause.

### d. *The FAA is applicable to the instant agreements, and therefore section 1298.7 is unavailing to plaintiffs.*

The remaining question is the applicability of the FAA to the instant case, so as to preclude plaintiffs from relying on section 1298.7 to avoid the arbitration agreements with Home.

The FAA applies to a contract "evidencing a transaction involving commerce." (9 U.S.C. § 2.)

In *Allied-Bruce Terminix*, two homeowners sued a termite control company in Alabama state court. (*Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 269 [115 S.Ct. 834, 837, 130 L.Ed.2d 753].) The company moved to compel arbitration pursuant to the written contract, and sought a stay to allow arbitration to proceed. The lower court denied the stay. That ruling was upheld by the Alabama Supreme Court pursuant to a state statute making written, predispute arbitration agreements invalid and unenforceable. (*Id.* at pp. 268-269 [115 S.Ct. at pp. 836-837].)

The United States Supreme Court reversed. (*Allied-Bruce Terminix Cos. v. Dobson, supra,* 513 U.S. at p. 268 [115 S.Ct. at pp. 836-837].) After examining the FAA's language, background, and structure, the high court concluded the term " 'involving' " commerce is broad and is indeed the functional equivalent of " 'affecting' " commerce. (513 U.S. at pp. 273-274 [115 S.Ct. at pp. 839-840].)[8] The court recognized the FAA's reach coincides with that of the commerce clause, and the FAA applies not only to the

---

[8]*United States v. Lopez* (1995) 514 U.S. 549, 559 [115 S.Ct. 1624, 1630, 131 L.Ed.2d 626], decided three months after *Allied-Bruce*, struck down the Gun-Free School Zones Act of 1990 on the ground an activity must *substantially affect* interstate commerce in order to be within Congress' power to regulate it under the commerce clause. *Lopez* noted Congress cannot use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities. (514 U.S. at p. 559 [115 S.Ct. at p. 1630].) However, *Lopez* did not purport to abrogate, limit or distinguish *Allied-Bruce*, which used an "affecting" commerce test in construing the FAA. *Lopez* did not even cite to *Allied-Bruce*, which remains good authority for the interpretation of the FAA.

With respect to *Lopez*'s impact on our interpretation of the FAA, we agree with *Palm Harbor Homes, Inc. v. McCoy* (Tex.App. 1997) 944 S.W.2d 716, which states: "*Lopez* is not on point and does not factor into our decision. The *Lopez* Court reviewed the constitutionality of a provision in the Gun-Free School Zone Act of 1990 that forbade 'any individual knowingly to possess a firearm at a place that the individual knows . . . is a school zone.' [Citation.] Finding that this provision was a criminal statute that *by its terms* has nothing to do with 'commerce' or any sort of economic enterprise, the Supreme Court held that the statute was invalid as beyond the reach of Congress' commerce power. [Citation.] [¶] The extent of Congress' power to legislate is not at issue here; unlike in *Lopez,* the [parties herein] have not challenged the constitutionality of the FAA. [Fn. omitted.] Thus, the only issue we must address is the how broad Congress intended the term 'involving commerce' to be. We follow the Supreme Court in holding that a transaction involves commerce under the FAA if it 'in fact' affects interstate commerce. *Allied-Bruce,* 513 U.S. at 268-70, 276-78, 115 S.Ct. at 837,

actual physical interstate shipment of goods but also contracts relating to interstate commerce. (*Id.* at p. 274 [115 S.Ct. at pp. 839-840].)

After ruling that the FAA broadly applies to contracts involving interstate commerce (*Allied-Bruce Terminix Cos. v. Dobson, supra,* 513 U.S. at p. 277 [115 S.Ct. at p. 841]), the high court readily concluded that the "transaction in this case, in fact, involved interstate commerce. In addition to the multi-state nature of Terminix and Allied-Bruce, the termite-treating and house-repairing material used by Allied-Bruce in its (allegedly inadequate) efforts to carry out the terms of the Plan, came from outside Alabama." (*Id.* at p. 282 [115 S.Ct. at p. 843].)[9]

In the instant case, the indicia of interstate commerce are far greater than in *Allied-Bruce Terminix.* The papers below included declarations by two Home executives, which stated the construction of the subject development project in Palmdale involved the receipt and use of building materials and equipment such as GE Appliances, Merrilet Cabinets, Majestic Fireplaces, Alanco Windows, Carrier Heat & Air equipment, Progress Lighting, Delta plumbing, World Carpet, and Armstrong flooring, which were manufactured and/or produced in states outside California, including Nevada, Arizona, Connecticut, Indiana, South Carolina, Pennsylvania, Michigan, Tennessee and Georgia, and which were shipped to the jobsite in Palmdale. Further, in connection with the instant development: Home contracted with out-of-state design professionals, trade contractors, subcontractors and others; Home communicated by interstate mail and telephone with out-of-state manufacturers, design professionals, trade contractors, subcontractors and their employees; and Home engaged in marketing and advertising activities throughout the country using interstate media.

These uncontroverted facts in the record compel the conclusion that the instant agreements between Home and plaintiffs involved interstate commerce. Therefore, the agreements are governed by the FAA. (9 U.S.C. § 2.)

---

841, 130 L.Ed.2d at 761, 766." (944 S.W.2d at pp. 719-720; see also *Crespo v. Kreisel Co., Inc.* (1997) 172 Misc.2d 182 [657 N.Y.S.2d 321, 322-323] [applying *Allied-Bruce* test to determine whether the operation of an apartment building amounted to interstate commerce so as to implicate the FAA]; *Arbitration Between Trans Chem. Ltd. and China Nat.* (S.D.Tex. 1997) 978 F.Supp. 266, 300-301 [applying *Allied-Bruce* test to determine whether contract involved commerce within meaning of FAA]; cf. *L & L Kempwood v. Omega Builders* (Tex.App. 1998) 972 S.W.2d 819, 821 [holding *Allied-Bruce*'s "affecting commerce" test did not survive *Lopez*'s articulation of a "substantially affecting" commerce test].)

Finally, even assuming the *Lopez* test were applicable, on this record we would readily conclude these transactions substantially affected interstate commerce so as to implicate the FAA.

[9]We note the parties in *Allied-Bruce Terminix* did not contest that the transaction in fact "involved" interstate commerce. (*Allied-Bruce Terminix Cos. v. Dobson, supra,* 513 U.S. at p. 282 [115 S.Ct. at p. 843].)

Accordingly, section 1298.7, a California statute applicable only to arbitration agreements, cannot be utilized by plaintiffs to avoid the arbitration agreements. (*Doctor's Associates, Inc. v. Casarotto, supra,* 517 U.S. at p. 687 [116 S.Ct. at p. 1656].)[10]

3. *Home's failure to initial certain arbitration clauses is not dispositive; with respect to the 28 Group Two plaintiffs as to whom Home did not initial the arbitration clause, on remand the trial court must make a factual determination as to whether Home intended to be bound by the arbitration provision.*

■ As indicated, although all 48 plaintiffs herein initialed the arbitration clauses in their contracts, as to 28 of the plaintiffs, Home failed to initial the arbitration clauses. As to the 28 Group Two plaintiffs, the trial court ruled they could not be compelled to arbitrate because there was no agreement to arbitrate.

On the threshold issue of whether the parties agreed to arbitrate a matter, courts apply ordinary state law principles that govern the formation of contracts, which principles are not preempted by the FAA. (*Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co., supra,* 68 Cal.App.4th at pp. 92-93.) Therefore, we look to California law for guidance.

■ "When it is clear, both from a provision that the proposed written contract would become operative *only* when signed by the parties as well as from any other evidence presented by the parties that both parties contemplated that acceptance of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created. [Citations.] This is so even though the party later sought to be bound by the agreement indicated a willingness to sign the agreement. [Citation.] On the other hand, if the respective parties orally agreed upon all of the terms and

---

[10]Plaintiffs also contend the parties agreed the matter would be controlled solely by the California Code of Civil Procedure, to the exclusion of the FAA. They rely on paragraph 14(C) of the contract, which states in pertinent part: "IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, *YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE.*" (Italics added.) Plaintiffs read too much into paragraph 14(C), which simply states that in the event of a party's refusal to submit to arbitration, the party may be forced into arbitration pursuant to California's statutory scheme for the enforcement of arbitration agreements. (§ 1281 et seq.) Further, the preceding paragraph, paragraph 14(B), provides that any controversy or claim "SHALL BE SETTLED AND FINALLY DETERMINED BY MEDIATION OR BY BINDING ARBITRATION *As PROVIDED BY THE FEDERAL ARBITRATION ACT (9 U.S.C. SECTION 1-14)* AND SIMILAR STATE STATUTES AND NOT BY A COURT OF LAW." (Italics added.) Thus, the arbitration agreement expressly declares the matter will be governed by the FAA as well as by state law. In sum, paragraph 14(C) simply provides a party may be forced into arbitration pursuant to section 1281 et seq.; paragraph 14(C) does not purport to exclude the applicability of the FAA.

conditions of a proposed written agreement with the mutual intention that the oral agreement should thereupon become binding, the mere fact that a formal written agreement to the same effect has not yet been signed does not alter the binding validity of the oral agreement. [Citation.]" (*Banner Entertainment, Inc. v. Superior Court, supra,* 62 Cal.App.4th at p. 358.)

■ Therefore, the lack of a perfected written arbitration agreement does not conclusively establish the absence of an agreement to arbitrate. Here, all 28 of the Group Two plaintiffs obviously intended to agree to arbitration in that they initialed the arbitration clauses in their respective contracts. As for Home, in view of the fact it initialed the arbitration clauses in its contracts with the 20 Group One plaintiffs, it reasonably may be inferred that Home intended to be bound by arbitration across the board and that its failure to initial the arbitration clauses in each and every contract was simply due to clerical error.

Therefore, the trial court on remand is directed to conduct an evidentiary hearing and to make a factual determination as to whether Home intended to be bound by arbitration, notwithstanding its failure to initial the arbitration provisions in its contracts with the Group Two plaintiffs. If the trial court finds that Home so intended, the trial court shall compel the Group Two plaintiffs to arbitrate their claims.

## DISPOSITION

The order denying the petition to compel arbitration is reversed with the following directions:

With respect to the 20 Group One plaintiffs, the reversal is with directions to grant Home's petition to compel arbitration.

As for the 28 Group Two plaintiffs, the trial court is directed to conduct an evidentiary hearing to determine whether Home intended to enter into arbitration agreements with said plaintiffs. If the trial court finds Home did intend to enter into arbitration agreements with said plaintiffs, it shall grant Home's petition to compel arbitration. Conversely, if the trial court finds Home did not so intend, it shall deny the petition.

The parties shall bear their respective costs on appeal.

Croskey, J., and Aldrich, J., concurred.

On June 27, 2002, the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied September 25, 2002.