Filed 11/21/14  Tito v. Lotus Property Services CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LALITA TITO et al., | B249999 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC497351) |
| v. | |
| LOTUS PROPERTY SERVICES, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County. Jane l. Johnson, Judge.  Affirmed.

Ogletree, Deakins, Nash, Smoak & Stewart, Robert R. Roginson and Brendan Y. Joy for Defendants and Appellants.

Abrolat Law, Nancy L. Abrolat and Edward E. Kim for Plaintiffs and Respondents.

_____

Defendant and respondent Cambridge Garden Apartment Homes[1] appeals an order denying its motion to compel arbitration pursuant to an arbitration provision contained in a written employment agreement. We affirm the order.

**FACTS**

In April 2012, Cambridge Garden hired plaintiffs and respondents Lalita Tito and Manuel Tito to work as residential apartment managers at its 76-unit apartment complex. At the time they were hired, the Titos signed a written employment agreement stating an hourly wage of "$8.00 per hour, plus overtime as required by law, for time spent carrying out assigned duties." Further, the employment agreement stated that it was a "condition" of the Titos's employment that they were "required to reside" at the apartment complex. The agreement stated that Cambridge Garden would provide "rent-free lodging" to the Titos in a specified unit within the apartment complex. As relevant to the current appeal, the employment agreement contained the following arbitration provision:

> "H.    Arbitration
>
> "In the event of a dispute between Employer and Employee not relating to possession of the premises, the parties agree to resolve their dispute by binding arbitration under the most current California employment law rules of the American Arbitration Association, which rules can be found at the website www.adr.org. Employee acknowledges and understands that by entering binding arbitration, Employee is forever giving up Employee's constitutional rights to have any dispute decided in a court of law before a jury, and instead is accepting the use of arbitration."

In addition to signing the overall employment agreement, the Titos signed their initials directly adjacent to the arbitration provision noted above.

---

[1]    Our references to Cambridge Garden include all defendants named in the Titos's action. Because the motion to compel arbitration was filed early in the action, the exact inter-relationships of the several named defendants are not ascertainable from the record.

2

In December 2012, the Titos sued Cambridge Garden, "on behalf of themselves [and] all other similarly situated and the general public." The Titos's complaint alleges that Cambridge Garden employed them as residential apartment managers from April to October 2012, and that, during their employment, Cambridge Garden violated numerous Labor Code sections by failing to pay regular wages at a legally required minimum rate, failing to pay overtime wages for work in excess of 8 hours per day and or 40 hours per week, and failing to pay wages within a legally required time.[2] Further, the Titos allege Cambridge Garden failed to provide them with accurate paystubs (and failed to maintain accurate employee records) showing the hours they worked and the wage rates as to the hours worked, including beginning and end times for work, and rest and meal times, and itemized deductions from their wages. The Titos allege Cambridge Garden acted with an accompanying intent to defraud in that it never intended to perform its promises to pay wages in accord with the requirements of the law. The Titos allege Cambridge Garden is liable for conversion in that it perpetrated a "theft" of their labor. Finally, the Titos allege Cambridge Garden violated the Unfair Competition Law (see Bus. & Prof. Code, § 17200 et seq.) by violating the Labor Code's statutory requirements.

In April 2013, Cambridge Garden filed a motion to compel the Titos to arbitrate their claims pursuant to the arbitration provision contained in the parties' employment agreement. Cambridge Garden's motion included a copy of the employment agreement, along with an argument that the agreement's arbitration provision was not procedurally or substantively unconscionable under *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 160. The Titos opposed the motion to compel arbitration on the ground that their Labor Code wage claims were statutorily excluded from being subject to arbitration under Labor Code section 229. Also, the Titos argued the arbitration provision was procedurally and substantively unconscionable for several reasons. In reply, Cambridge Gardens argued that Labor Code section 229 was preempted because the parties' arbitration agreement was governed by the Federal Arbitration Act (FAA; 9 U.S.C. § 1

---

[2]     It is not alleged, nor is it to be found in the record, whether the Titos are still residing in their unit in Cambridge Garden's apartment complex.

3

et seq).[3]  In this vein, Cambridge Garden cited *Perry v. Thomas* (1987) 482 U.S. 483 (*Perry*)).  Further, Cambridge Garden argued that the employment agreement's rental-housing and employment elements involved interstate commerce.  This argument was not supported by a developed evidentiary record.

The trial court denied Cambridge Garden's motion to compel arbitration. The court ruled that Labor Code section 229 expressly provided that wage claims such as those alleged by the Titos were not subject to arbitration.  The court ruled Cambridge Garden failed to present evidence showing that the parties' employment agreement, including its arbitration provisions, involved interstate commerce, and, for this reason, had failed to show that the FAA applied and preempted Labor Code section 229. Further, the court ruled the arbitration agreement itself evidences "some procedural unconscionability" because it "references the arbitration rules."  Given the court's cite to *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393, we understand the court to have faulted Cambridge Garden for referring to the employment arbitration rules of the American Arbitration Association, without attaching a copy of those rules to the parties' written employment agreement.  The court found "some level of [substantive] unconscionability" in that the Titos would bear costs that they would not bear if they filed the action in court.

Cambridge Garden filed a timely notice of appeal.

## DISCUSSION

### I.      Standard of Review

Where the issues presented by a motion to compel arbitration involve only the interpretation of an arbitration agreement, and there are no factual disputes concerning the language of the agreement or its formation, a reviewing court determines the scope and enforceability of the agreement de novo.  (See, e.g. *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684 (*Coast Plaza*); and *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1468-1469.)  The record before us on the

---

[3]      All further undesignated section references are to the FAA.

instant appeal shows such a tableau.  Thus, we review the trial court's arbitration ruling de novo.

## II.    Enforcement of the Arbitration Agreement

Cambridge Garden contends the trial court's arbitration ruling must be reversed because the court erred in not enforcing the parties' arbitration agreement in accord with the FAA.  Specifically, Cambridge Garden argues it showed that the FAA applies to the parties' written employment agreement, including its arbitration provision.  Cambridge Garden argues the FAA preempts any and all state law in conflict with the FAA, and that this means the Titos's claims are not statutorily excluded from arbitration under Labor Code section 229 as the trial court concluded.  We disagree.

### *The Implicated Law — Labor Code section 229*

Labor Code section 229 provides:  "Actions to enforce the provisions of [the Labor Code] for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate. . . ."  Labor Code section 229 reflects the Legislature's intent to assure a judicial forum for disputes involving state-mandated wages, notwithstanding that there is also a strong public policy in favor of arbitration.  (*Flores v. Axxis Network & Telecommunications, Inc*. (2009) 173 Cal.App.4th 802, 811.)

### *The Implicated Law — The FAA*

Section 2 of the FAA provides:  "A written provision *in . . . a contract evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*."  (Italics added.)  Section 2 establishes a federal law policy in favor of arbitration in cases arising from contracts involving commerce.  (See generally *Moses H. Cone Hospital v. Mercury Constr. Corp*. (1983) 460 U.S. 1, 24.)  Section 2 provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause of the Unites States Constitution.  (*Perry, supra*, 482 U.S. at p. 490.)  At the same time, the latter segment of Section 2 italicized above permits a court to deny enforcement of an arbitration

5

agreement on such grounds as would exist for the non-enforcement of any other type of contract. Thus, a court may deny enforcement of an arbitration agreement under generally applicable contract defenses, "such as fraud, duress, or unconscionability," but not under a defense that applies "*only* to arbitration." (See *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687, italics in original.)

In *Perry, supra,* 482 U.S. 483, the United States Supreme Court examined Section 2 of the FAA and Labor Code section 229 in a case involving a stockbroker's claim for unpaid commission wages. The court concluded that FAA Section 2 is "in unmistakable conflict" with Labor Code section 229's requirement that litigants be provided a judicial forum for resolving wage disputes, and that, under the Supremacy Clause, Labor Code section 229 "must give way" when the FAA applies. (*Id*. at pp. 489-491.) No party in *Perry* questioned, or, a least there is nothing in the opinion to suggest a question, that the stockbroker's contract involved interstate commerce.

*Analysis*

A party claiming that a state law is preempted by federal legislation has the burden of demonstrating preemption. (*Shepard v. Edward MacKay Enterprises, Inc*. (2007) 148 Cal.App.4th 1092, 1101.) In the context of a claim of FAA preemption, our state's courts have found that this burden requires the claiming party to show that the subject matter of the agreement at issue involves interstate commerce. (See, e.g., *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 687-688 (*Lane*).) In many cases, parties do not dispute that an agreement at issue involves interstate commerce and that the FAA applies. (See, e.g., *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 25; *Stirlen v. Supercuts, Inc*. (1997) 51 Cal.App.4th 1519, 1543.) In other cases, the element of interstate commerce has been found to exist on undisputed facts. (See, e.g., *Guiliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276 (*Guiliano*); *Basura v. U.S. Home Corp.* (2002) 98 Cal.App.4th 1205, 1214.) Here, the Titos did dispute that their employment agreement with Cambridge Garden involved interstate commerce. Thus, the burden was on Cambridge Garden to show that the agreement did involve interstate commerce. We agree with the trial court that Cambridge Garden did not present

6

evidence to show that its employment agreement with the Titos involved interstate commerce.

We find *Lane, supra*, 224 Cal.App.4th 676 to be instructive on this issue: "A party seeking to enforce an arbitration agreement has the burden of showing FAA preemption. [Citation.] For example, a [party] seeking an order to compel arbitration must show that the subject matter of the agreement involves interstate commerce. [Citations.] Thus, in *Guiliano,* the employer supported its motion to compel arbitration with the declaration of its executive vice-president and chief legal officer that: '(1) [Employer] engages in interstate commerce by acquiring, developing, and selling residential and commercial properties in both California and Arizona, and by shipping supplies from other states to California and Arizona; and (2) [employee] actively assisted [employer]'s multistate activities by negotiating loans with a bank that is headquartered outside of California.' (*Guiliano, supra*, 149 Cal.App.4th at p. 1283.) The complaint also alleged that the employer was engaged in " 'business throughout Arizona and California,' " and the employee admitted he ' "attend[ed] meetings, site visits and grand opening ribbon cuttings" ' in other states. On this record, this court found the interstate nature of the employment undisputed. [Citation.] Here, in contrast, the complaint alleged that Lane is a California resident and FCM a California corporate entity, doing business and with its principal place of business in California. Lane never admitted to being engaged in interstate commerce, and FCM produced no declaration about the nature of its business or the scope of Lane's employment. FCM's bare assertion that 'Mr. Lane was a security analyst at a firm which manages capital investments' is insufficient to support a finding that Lane's employment involved interstate commerce." (*Lane, supra*, 224 Cal.App.4th at pp. 687-688.)

7

*Lane* is consistent with other California decisions. In *Woolls v. Superior Court* (2005) 127 Cal.App.4th 197 (*Woolls*), Division Three of our court addressed whether the FAA applied to an arbitration provision in a home improvement contract. The homeowner contended the arbitration provision failed to comply with Business and Professions Code section 7191, which prescribes specific warning language for arbitration agreements in consumer contracts. The party seeking arbitration, the construction company, raised the issue of FAA preemption, but failed to present a factual record establishing preemption. (*Woolls,* at p. 213.) Division Three ruled that the construction company's mere averment to case law was not sufficient to establish preemption, particularly where the cited case law was based on a factual showing supporting preemption. (*Id.* at pp. 213-214.)

*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193 (*Hoover*), is similar. *Hoover* involved a sales agent's class claims alleging that his employer, an insurance company, wrongly classified him and the other class members as independent contractors, rather than as regular employees, and that the company failed to pay state-mandated wages required to be paid to employees. (*Hoover, supra*, 206 Cal.App.4th at p. 1199.) The trial court denied the insurance company's petition to compel arbitration, and the Court of Appeal affirmed. In affirming, the Court of Appeal rejected the insurance company's claim of FAA preemption for the following stated reasons:

"AIL had the burden to demonstrate FAA coverage by declarations and other evidence. [Citations.] The only established facts are that Hoover was a California resident who sold life insurance policies. Even though AIL is based in Texas, there was no evidence in the record establishing that the relationship between Hoover and AIL had a specific effect or 'bear[ing] on interstate commerce in a substantial way.' (*Citizens Bank v. Alafabco, Inc*. (2003) 539 U.S. 52, 56-57.) Hoover was not an employee of a national stock brokerage or the employee of a member of a national stock exchange. [Citations.] Unlike the plaintiff in *Guiliano v. Inland Empire Personnel, Inc*. (2007) 149 Cal.App.4th 1276, 1287, Hoover did not work in other states or engage in multimillion dollar loan activity that affected interstate commerce by negotiating with a

8

bank that was headquartered in another state. Under these circumstances, if the FAA did not apply, the exception favoring federal preemption and arbitration did not operate." (*Hoover, supra*, 206 Cal.App.4th at pp. 1207-1208.) Our Supreme Court denied a petition for review and depublication in *Hoover*. (See *Hoover v. American Income Life Insurance* (Sept. 12, 2012, S204218 [nonpub. order].)

We find the current case between the Titos and Cambridge Garden is similar to *Hoover*. Here, Cambridge Garden's evidence consisted of the following: a half-page long declaration of its Chief Financial Officer, Vincent Medina, which only averred to facts relating to the execution of Respondents' employment agreement; a half-page long declaration of its former counsel, Frank Rubin, which set forth foundational facts relating to the attached American Arbitration Association's rules; the parties' employment agreement, with no evidentiary foundation; and an incomplete copy of the AAA's arbitration rules. There was no evidence showing how Cambridge Garden's business affected interstate commerce, and no evidence showing that the Titos's activities as employees of Cambridge Garden affected interstate commerce. In the end, while we do not find that the parties' contractual relationship was necessarily outside interstate commerce; we do hold that Cambridge Garden did not make a showing, with evidence, that it did involve interstate commerce as consistent with *Lane*, *Woolls*, and *Hoover*.

To avoid this conclusion, Cambridge Garden cites *Russell v. United States* (1985) 471 U.S. 858 and similar cases in support of an argument that the rental aspect of the contract relationship with the Titos evidences the involvement of interstate commerce as a matter of law. We are not persuaded. In *Russell*, a defendant was convicted under a federal criminal arson statute; the issue before the Supreme Court was the interpretation of the statute, and whether it applied to the defendant's act of burning down a two-unit apartment building that he owned. The statute made it a federal crime to destroy or to attempt to destroy by fire "any building . . . used in interstate . . . commerce or in any activity affecting interstate . . . commerce." The court found that the statute applied, ruling that "the rental of real estate is unquestionably" an activity that affects interstate commerce. (*Russell, supra*, 471 U.S. at p. 862.)

9

In the current case between Cambridge Garden and the Titos, we are not presented with a question of statutory interpretation and the reach of a federal statute, but with the factual scope of employees' activities, and with whether those activities involve interstate commerce. The issue is whether the Titos's employment activities under their contract with Cambridge Garden fell within the reach of the FAA. While it might be said that Cambridge Garden's business of renting units in its building involved interstate commerce as a matter of law, it does not necessarily follow that the employment activities of the Titos did the same. For the reasons explained above, and discussed in *Lane*, *Woolls* and *Hoover*, we affirm the trial court's ruling that Cambridge Garden did not make a sufficient showing to support a determination of FAA applicability and preemption in that it did not show the effect of the Titos's employment activities on interstate commerce.

## III.   Unconscionability

Having determined that the Titos's claims were not subject to arbitration under Labor Code section 229, we do not and need not address whether there was procedural and substantive unconscionability attendant with the parties' employment agreement.

### DISPOSITION

The order denying the motion to compel arbitration is affirmed. Each party to bear its own costs on appeal.

BIGELOW, P.J.

We concur:

FLIER, J.

GRIMES, J.

10