Filed 2/3/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KRISTIN CASEY,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>     Respondent;<br><br>D.R. HORTON, INC. et al.,<br><br>     Real Parties in Interest. | A170650<br><br>(Contra Costa County<br>Super. Ct. No. C23 02347) |

Petitioner Kristin Casey sued real parties in interest D.R. Horton, Inc. (her former employer) and one of its employees, Kris Hansen, alleging sexual harassment and other claims. D.R. Horton filed a motion to compel arbitration, which was joined by Hansen. Casey opposed the motion, relying on the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (9 U.S.C. §§ 401–402, EFAA or Act).[1] This federal law permits plaintiffs to elect to render arbitration agreements unenforceable in cases relating to a sexual harassment dispute. (9 U.S.C. § 402(a).) The trial court granted the motion to compel, reasoning that the EFAA was inapplicable

---

[1] The EFAA amended the Federal Arbitration Act (9 U.S.C. § 1 et seq., FAA), and it became effective on March 3, 2022.

because the parties' employment agreement specified that California law governed. Casey then filed this petition for a writ of mandate.

We grant Casey's petition and direct respondent trial court to vacate its order granting the motion to compel arbitration. In doing so, we hold that the EFAA preempts attempts under state law to compel arbitration of cases relating to a sexual harassment dispute, and parties cannot contract around the law by way of a choice-of-law provision.

I.
FACTUAL AND PROCEDURAL
BACKGROUND[2]

Casey began working in 2015 as a real estate agent for D.R. Horton, a national homebuilding company. In 2017, she signed a new employment contract, which includes the arbitration clause that is the subject of these writ proceedings. This clause provides that if the parties are unable to resolve a dispute through negotiation or mediation, they agree to binding arbitration administered by JAMS. It further provides that by entering into the agreement, the parties agree they are giving up their right to litigate in court and that a party who refuses to submit to arbitration "MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE." A separate clause, titled "<u>Governing Law</u>," provides in full: "The construction and interpretation of this Agreement shall at all times and in all respects be governed by the laws of the State of California."

Casey was a successful agent for D.R. Horton and became one of the company's top performers. In late 2022 she was assigned to work with Hansen at a remote development site in Fairfield. Starting on their second

_____

[2] The following facts are taken from Casey's complaint and the evidence submitted in connection with the motion to compel arbitration.

day working together, Hansen made a series of unwanted sexual remarks, and Casey felt unsafe and became physically nauseous when she was around Hansen. Casey ultimately went on medical leave because of the strain, and she resigned in September 2023.

That same month, Casey filed this lawsuit against D.R. Horton and Hansen. She alleged the following causes of action under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq., FEHA): (1) sexual harassment (*id.*, § 12940, subd. (j)) (against both D.R. Horton and Hansen), (2) discrimination based on gender or sex (*id.*, subd. (a)) (against D.R. Horton), (3) retaliation (*id.*, subd. (h)) (against D.R. Horton), and (4) failure to prevent discrimination and harassment (*id.*, subd. (k)) (against D.R. Horton). Casey also alleged causes of action against D.R. Horton for negligent hiring and retention, constructive discharge against public policy, failure to pay overtime, failure to provide accurate wage statements, and entitlement to waiting-time penalties.

D.R. Horton filed a motion to compel arbitration, and one day before Casey's opposition was due, Hansen filed a one-page "joinder."

Casey opposed the motion to compel, arguing that the EFAA applied and that she could not be forced to arbitrate her case. She also objected to Hansen's joinder as an "unauthorized" pleading, arguing that Hansen was required to separately move to compel arbitration.

The trial court granted the motion to compel arbitration after accepting Hansen's joinder. It agreed with D.R. Horton that the choice-of-law provision in the parties' agreement meant that neither the FAA nor the EFAA, which is a part of the FAA, applied.

Casey filed a petition for a writ of mandate, and this court issued an order to show cause.

3

II.

DISCUSSION

*A. The State and Federal Laws Governing Arbitration Agreements and the Standard of Review.*

The FAA and this state's corollary, the California Arbitration Act (Code Civ. Proc., § 1280[3] et seq., CAA), generally embody a liberal policy in favor of the enforcement of arbitration agreements. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 405–406.) The two statutes share origins in earlier statutes of other states (*id.* at p. 406), and both provide that predispute arbitration agreements are valid, irrevocable, and enforceable. (9 U.S.C. § 2, hereafter referred to as "section 2"; § 1281.) The statutes can work in tandem. Thus, where the FAA applies to an arbitration agreement in California, the CAA may provide the procedures to enforce such an agreement if the parties selected California law and the state procedures do not offend policies embodied in the FAA. (See *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 471, 476 (*Volt*).)

But the federal and state schemes differ in one key aspect that controls the resolution of this case: whereas both the FAA and CAA provide exceptions to the enforcement of arbitration agreements when grounds exist for the revocation of any contract (section 2; § 1281), the FAA, unlike the CAA, also excepts agreements "as otherwise provided in [the EFAA]"—i.e., all cases relating to a sexual harassment dispute. (Section 2.)

The EFAA, a relatively new statute enacted in 2022, provides that a "person alleging conduct constituting a sexual harassment dispute" may elect that "no predispute arbitration agreement . . . shall be valid or enforceable

---

[3] All statutory references are to the Code of Civil Procedure unless otherwise specified.

4

with respect to the case which is filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute." (9 U.S.C. § 402(a).) A "[s]exual harassment dispute" is defined as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." (9 U.S.C. § 401(4).) There is no California statutory counterpart to the EFAA.[4]

In general, we review a ruling on a petition to compel arbitration for an abuse of discretion. (*Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541.) But when, as here, the ruling presents a pure question of law (whether the EFAA applies and preempts D.R. Horton's motion to compel), we review the trial court's order de novo. (*Ibid.*)

*B. Casey May Invoke the EFAA to Avoid Arbitration.*

1. The EFAA applies to the parties' transaction because it sufficiently involved interstate commerce.

Initially, we consider whether the evidence in this case shows a sufficient indicia of interstate commerce for the EFAA to apply to the parties' transaction. We do so because the EFAA, as part of the FAA, was enacted under Congress's authority under the commerce clause and extends to contracts that "involv[e] commerce."[5] (9 U.S.C. § 2.) Because the FAA's

---

[4] Although there is no state counterpart, the California Legislature has not been silent on the subject. In 2019, Governor Newsom signed legislation that would have broadly barred employers from requiring any applicant or employee to arbitrate claims under FEHA or the Labor Code. (Assem. Bill No. 51 (2019–2020 Reg. Sess.).) The Ninth Circuit held that this legislation was preempted by the FAA. (*Chamber of Commerce of the United States v. Bonta* (9th Cir. 2023) 62 F.4th 473, 490.)

[5] The commerce clause provides that Congress shall have the power "to regulate Commerce with foreign Nations, and among the Several States." (U.S. Const., art. I, § 8, cl. 3.)

reach coincides with that of the commerce clause, the statute "applies not only to the actual physical interstate shipment of goods but also contracts relating to interstate commerce." (*Basura v. U.S. Home Corp.* (2002) 98 Cal.App.4th 1205, 1213–1214 (*Basura*).)

The undisputed evidence here amply demonstrates a nexus to interstate commerce for the EFAA to apply.[6] In opposing the motion to compel arbitration, Casey attested that she had personal knowledge that D.R. Horton "conducts business in 33 states and employs multiple trades such as lumber companies, [title] companies, and escrow companies that are based out of different states." She further attested that as a regular part of her work, she spoke to potential and actual buyers by communicating (both by phone and email) with out-of-state purchasers. And when she completed sales with those purchasers (some of whom were from outside California), she coordinated with out-of-state notaries to send and return loan documentation. If the out-of-state purchasers could not be in California before the close of escrow, Casey would coordinate with a title company to obtain out-of-state powers of attorney so that the buyers could complete the sale even though they were not physically present in the state. Another vendor she worked with was D.R. Horton's "in-house lending department called DHI Mortgage," which "provides mortgage loans to buyers in every state DR Horton builds and sells homes in."

---

[6] In general, when the relevant facts are undisputed, whether interstate commerce was involved so as to implicate the FAA is a question of law subject to de novo review. (*Basura*, *supra*, 98 Cal.App.4th at p. 1211.) Here, D.R. Horton did not challenge Casey's evidence since the company contended that the FAA did not apply because the parties elected to have California instead of federal law apply.

This evidence shows a sufficient link with interstate commerce to establish the EFAA's reach to the parties' dispute. (See *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 246 [affirming determination that FAA applied where defendant presented uncontroverted evidence and plaintiff failed to address the issue]; see also *Basura, supra,* 98 Cal.App.4th at p. 1214 [FAA applied to contracts with home seller where construction involved receipt and use of building materials and equipment from outside California].)

2. The EFAA preempts D.R. Horton's claim to compel arbitration.

Having determined that the FAA (and thus the EFAA) applies to the parties' transaction, we turn to consider whether D.R. Horton's effort to compel arbitration is preempted by the federal law and conclude that it plainly is.

We recently summarized the law governing federal preemption. In general, there are three situations in which state law is preempted: " '(1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption, where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) conflict preemption, where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." (*Keeton v. Tesla, Inc.* (2024) 103 Cal.App.5th 26, 34–35 (*Keeton*).)

Conflict preemption is present here because the EFAA states a blanket rule of unenforceability of arbitration agreements in cases related to a sexual harassment dispute while the CAA provides for the general enforceability of arbitration agreements in *all* cases—including those related to a sexual

7

harassment dispute.  As we have said, conflict preemption is present when " 'it is impossible for a private party to comply with both state and federal requirements . . . or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' " (*Dowhal v. SmithKline Beecham Consumer Healthcare* (2004) 32 Cal.4th 910, 923.)  "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects."  (*Crosby v. National Foreign Trade Council* (2000) 530 U.S. 363, 373.)

The EFAA's purpose is plainly obstructed by an attempt to use state law to force a person who is alleging sexual harassment to arbitrate their dispute.  (See *Volt, supra*, 489 U.S. at p. 477.)  To reach this conclusion we need look no further than the EFAA's text, which explicitly states that "a person alleging conduct constituting a sexual harassment dispute" may elect that "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which . . . relates to the . . . sexual harassment dispute."

This language is clear, and it differs from the portion of section 2 that governs all other cases—i.e., cases not relating to a sexual harassment dispute—in at least two key respects that bear on the preemption analysis. First, the EFAA rejects the policy of favoring enforceability of arbitration agreements, and replaces it with a rule of *unenforceability* of arbitration agreements in cases relating to a sexual harassment dispute.  Second, the EFAA has no exceptions to its rule of unenforceability, while the portion of section 2 governing other cases has exceptions to its policy of enforceability.

D.R. Horton maintains that preemption does not apply here because the parties' agreement specified that its construction and interpretation was

8

to be governed by state law, and it further stated that a "party may be compelled to arbitrate under the authority of the California Code of Civil Procedure." (Uppercase omitted.) The company argues that absent the FAA, the CAA "would require the matter to proceed in arbitration." But this point, even if true, is immaterial because the FAA (including the EFAA) exists and plainly applies.

D.R. Horton's argument is essentially that parties who select state law in their arbitration agreements effectively opt out of the FAA even if their contracts involve interstate commerce. The company relies on a series of cases that discuss whether a California statute (§ 1281.2, subd. (c)) is consistent with the FAA by allowing courts to stay or deny arbitration proceedings pending litigation of a third-party dispute where conflicting results could arise. (See *Volt, supra*, 489 U.S. at pp. 471, 476; *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 381; *Mastick v. TD Ameritrade, Inc.* (2012) 209 Cal.App.4th 1258, 1263–1265; *Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 783–784; *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, 717–718, 726.) It also relies on another line of cases that address whether a 2019 amendment to the CAA is consistent with the FAA by placing time limits on paying certain arbitration costs.[7] These cases would be inapposite even if the instant dispute did not involve the EFAA,

---

[7] See Stats. 2019, ch. 870, §4 (§ 1281.98); *Keeton, supra*, 103 Cal.App.5th at pp. 37–38, *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 629–630; cf. *Hernandez v. Sohnen Enterprises, Inc.* (2024) 102 Cal.App.5th 222, 242. The Supreme Court has granted review in *Keeton* (S286260, petn. rev. granted Sept. 11, 2024) and *Hernandez* (S285696, petn. rev. granted Aug. 21, 2024). Both are being held for the lead case, *Hohenshelt v. Superior Court* (2024) 99 Cal.App.5th 1319 (petn. rev. granted June 12, 2024, S284498).

since they generally involved situations where the FAA's substantive provisions applied alongside the CAA's procedural rules. The cases did not hold, as D.R. Horton claims, that the parties could opt out of the FAA.

But these cases are particularly unenlightening since they all involved the question of whether a state law was consistent with the FAA's goal of enforceability of arbitration agreements, not the EFAA's rule of unenforceability. D.R. Horton simply ignores the distinctions between the two parts of section 2, and its cases interpret the part of section 2 that governs cases not related to a sexual harassment dispute. (See e.g. *Cape Flattery Ltd. v. Titan Maritime, LLC* (9th Cir. 2011) 647 F.3d 914, 916 [in case not involving EFAA, courts should enforce contracting parties' agreement to be bound by different country's arbitration law]; *Ford v. Nylcare Health Plans* (5th Cir. 1998) 141 F.3d 243, 247 [in case not involving EFAA, parties "may designate state law to govern the scope of an arbitration clause in an agreement otherwise covered by the FAA"].) Again, this part of section 2 states that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist . . . for the revocation of any contract." (9 U.S.C. § 2.) This policy of enforceability was intended " 'to overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law.' " (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1343–1344; see also 9 U.S.C. § 2; § 1281.)

In contrast, the EFAA states a categorical rule of unenforceability, and therefore differs from the part of section 2 that governs non-EFAA cases, which can accommodate state and other alternative arbitration mechanisms so long as they do not conflict with the policy of enforceability. Because the language and purpose of the two different parts of section 2 are dramatically

10

different, cases discussing preemption principles under the portion of section 2 that governs non-EFAA cases have little relevance here. Whether particular state provisions are consistent with the policy of enforceability has no bearing on whether an attempt to apply a state law to force a person who has alleged a sexual harassment claim into arbitration against their will is preempted by the EFAA.

D.R. Horton also relies on *Ziober v. BLB Resources, Inc.* (9th Cir. 2016) 839 F.3d 814, but to the extent the case has any applicability here, it supports Casey's position. There, a plaintiff sued under a federal law that protects employment rights for servicemembers who are deployed. (*Id.* at p. 815.) When his employer sought to arbitrate the claim, the employee argued that the federal statute created a procedural right to a judicial forum. (*Id.* at p. 818.) The Ninth Circuit disagreed. (*Ibid.*) It noted that it was settled that agreeing to arbitrate a statutory claim does not forgo the substantive rights afforded by the statute, and the only way the employee could prevail was if the federal statute "create[d] a procedural right to a judicial forum." (*Ibid.*) The court stressed that Congress *could have* expressed the intention to guarantee judicial forums for suits under the statute, but such an intention was "not expressed in the statute itself, or in the legislative history." (*Id.* at p. 821.) Here, by contrast, Congress *did* express such an intention. The whole point of the EFAA is to ensure that a person alleging conduct constituting a sexual harassment dispute can insist on a judicial forum instead of arbitration.[8]

---

[8] By motion filed on November 25, 2024, Casey seeks judicial notice of a prepared statement of U.S. Senator Chuck Grassley in support of passage of the EFAA. As the statement is unnecessary to the resolution of Casey's petition, we deny the request.

The parties' selection of California law meant that they chose the CAA's arbitration-enforcement procedures, along with the state's substantive law for most of their disputes. But D.R. Horton's attempt to compel arbitration of Casey's case—which directly relates to a sexual harassment dispute—by relying on the choice-of-law provision would directly contravene Congress's purpose and objectives in enacting the EFAA. It is therefore preempted. Accordingly, Casey may elect to render the arbitration provisions invalid and unenforceable in this case, and the trial court erred in denying her the ability to do so.

### C. The EFAA Applies Because Casey's Claims Accrued After Its Enactment.

Again relying on general caselaw not specific to the EFAA, D.R. Horton next argues that even if the EFAA applies, it does not apply "retroactive[ly]" to Casey's 2017 employment agreement. The company is mistaken. "By its terms, the EFAA applies 'with respect to *any dispute or claim that arises or accrues* on or after the date of enactment of this Act'—i.e., March 3, 2022. (Pub.L. No. 117-90 (Mar. 3, 2022) § 3, 136 Stat. 2, 28 . . . .)" (*Doe v. Second Street Corp.* (2024) 105 Cal.App.5th 552, 566.) The EFAA applies even "where a plaintiff alleges a course of sexually harassing conduct that occurs both before and after the EFAA's enactment." (*Id.* at p. 571.)

Here, Casey's complaint alleges that the sexual harassment she suffered began after she was assigned to work with Hansen in December 2022—months after the effective date of the EFAA. (See *Kader v. Southern California Medical Center, Inc.* (2024) 99 Cal.App.5th 214, 224–225 [EFAA applied because even though arbitration agreement was signed before Act's effective date, dispute arose in May 2022].) The EFAA thus applies to

12

her action.  We reject D.R. Horton's argument that the EFAA "cannot validly and retroactively change the Parties' contract in the relevant sense."

*D. Casey's Entire Case Is Exempt from Arbitration.*

D.R. Horton lastly contends that even if Casey is permitted to opt out of the arbitration agreement as to her claims for sexual harassment, the order compelling arbitration must be affirmed as to Casey's wage-and-hour claims. We disagree.  Consistent with other state appellate courts that have considered the issue, we hold that where a plaintiff's lawsuit contains at least one claim that fits within the scope of the EFAA, "the arbitration agreement is unenforceable as to all claims asserted in the lawsuit." (*Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791, 800.)  The EFAA provides that it applies to "a case" (9 U.S.C. § 402(a))—as opposed to a claim—that a plaintiff brings alleging sexual harassment, meaning that the EFAA applies to an entire case.  (*Liu* at p. 803; see also *Doe v. Second Street Corp.*, *supra*, 105 Cal.App.5th at p. 577.)  Although D.R. Horton contends that *Liu* and *Doe* "got it wrong," we decline to depart from their holdings, especially in light of the fact that the Supreme Court has denied review in *Liu*.  (No. S287882, petn. rev. den. Dec. 31, 2024.)

In light of our conclusion that the EFAA applies here, it is unnecessary to reach Casey's argument that the trial court abused its discretion when it permitted Hansen to join in D.R. Horton's motion to compel arbitration without filing his own separate motion.

### III.
#### DISPOSITION

Casey's November 25, 2024 request for judicial notice is denied.

Let a peremptory writ of mandate issue directing the respondent trial court to vacate the order compelling arbitration and to enter a new order

13

denying the motion.  The stay previously issued by this court is dissolved. Casey shall recover her costs.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)

_____

Humes, P.J.

WE CONCUR:


_____

Banke, J.


_____

Langhorne Wilson, J.

*Casey v. Superior Court*  A170650

15

Trial Court: Contra Costa Superior Court

Trial Judge: Hon. Terri Mockler

Counsel:

Collier Socks, LLP, Dustin L. Collier, Drew F. Teti, for Petitioner.

Campbell Law, APC, Michael J. Campbell, Beniza O. Cancino; Real Parties in Interest. (Hansen)

Wood, Smith, Henning & Berman LLP, Steven R. Disharoon, Jason C. Ross, Zachary Lynch, for Real Parties in Interest. (D.R. Horton)

*Casey v. Superior Court*  A170650