Filed 2/24/23  Tagg v. Capistrano Beach Care Center CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| ANITA TAGG, by and through her successor in interest, BRIAN TAGG, | B319670 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV35700) |
| v. |  |
| CAPISTRANO BEACH CARE CENTER, LLC et al., |  |
| Defendants and Appellants. |  |

APPEAL from an order of the Superior Court of Los Angeles County, Lawrence P. Riff, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Tracy D. Forbath, Daniel Velladao, Kathleen M. Walker, and Jeffrey S. Healey for Defendants and Appellants.

Arias Sanguinetti Wang & Torrijos, Mike Arias, and Robert M. Partain for Plaintiff and Respondent.

_____

Capistrano Beach Care Center, LLC and Cambridge Healthcare Services, Inc. (collectively, Capistrano defendants) appeal from an order denying their petition to compel arbitration of Anita Tagg's cause of action for elder abuse. The Capistrano defendants contend the trial court erred in finding Tagg only agreed to arbitrate her medical malpractice claims. They argue further that even if Tagg only agreed to arbitrate medical malpractice disputes, her elder abuse claim sounds in medical malpractice, and therefore, the court should have ordered arbitration of her claim. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Arbitration Agreement*

On June 15, 2021 Tagg was admitted to a skilled nursing facility (Facility) operated by the Capistrano defendants after she fell and fractured her vertebrae. Tagg and the Capistrano defendants' representative, McKenna Hensley, signed portions of a two-page stand-alone arbitration agreement (agreement).[1] The agreement made clear in article 3 that "execution of this Arbitration Agreement is not a precondition to receiving medical treatment, care, services and/or for admission to the Facility and is not a requirement to continue receiving medical treatment, care and services at the Facility."

Article 1 provides, "It is understood that any dispute as to medical malpractice, that is as to whether any medical services

---

[1]    It is undisputed that Tagg signed the agreement during her stay at the Facility, although she did not date the agreement. Hensley wrote "9/13/20" next to her signature on the agreement, which was nine months before Tagg's admission date.

2

rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration."

Article 2 provides, "It is further understood that any dispute between Resident and . . . [the Capistrano defendants], including any action for injury or death arising from negligence, intentional tort and/or statutory causes of action (including all California Welfare and Institutions Code sections and Health and Safety Code section 1430), will be determined by submission to binding arbitration and not by lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. The parties to this agreement are giving up their Constitutional right to have all disputes decided in a court of law before a jury, and instead are accepting the use of binding arbitration."

Article 4 provides that the agreement "shall be binding for any dispute, except for disputes pertaining to collections or evictions." Further, the agreement is binding on all parties and the resident's "representatives, executors, family members, and heirs who bring any claims individually or in a representative capacity." The agreement also contains a certification provision under which the resident or signatory on behalf of the resident certifies he or she has read the agreement, has a copy of the agreement, and is authorized to sign the agreement.

The agreement's articles and certification provision are in black ink.  At the end of the agreement (following the certification provision) are two notice provisions, each in all capital letters in red ink.  Each notice provision is followed by lines for the Facility representative and resident to sign and date.

The first notice provision states, "Notice:  By signing this contract you are agreeing to have any issue of medical malpractice decided by neutral arbitration and you are giving up your right to a jury or court trial.  See article 1 of this contract." (Capitalization omitted.)  Below this notice Hensley signed her name as the Facility representative, wrote "9/13/20," and stated her title as "Admissions Assistant."  Tagg signed her name below the line for "Resident's Signature," but she did not provide a date.

The second notice provision states, "Notice:  By signing this contract you are agreeing to have all claims, including claims other than a claim for medical malpractice, decided by arbitration and you are giving up your right to a jury or court trial and you agree that no party shall adjudicate any claim on a class action basis."  (Capitalization omitted.)  Below this notice Hensley again signed her name as the Facility's representative, wrote "9/13/20," and stated her title as "Admissions Assistant."  Tagg did not sign this notice.

B.     *The Complaint*
On September 28, 2021 Tagg filed a complaint against the Capistrano defendants[2] alleging causes of action for elder abuse in violation of the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act or Act) (Welf. & Inst. Code,

---

[2]     Tagg also named Doe 1 to 100 as defendants.

4

§ 15600 et seq.) and negligent hiring and supervision. The complaint alleged then-82-year-old Tagg was admitted to the Facility on June 15, 2021. The elder abuse cause of action alleged that during Tagg's 10-day stay at the Facility, the Capistrano defendants "ignored her needs" and "wrongfully withheld necessary care and services" by failing "to properly and competently evaluate [Tagg's] clinical conditions and risk factors for falling"; to implement, monitor, and revise interventions to prevent Tagg from falling; "to ensure staff provided [Tagg] with care and interventions as called for by care plans, physician orders, and assessments"; and "to timely transfer [Tagg] to an acute care facility when her emergent medical needs and conditions required such elevated provision of care." (Capitalization omitted.) As a direct and proximate result of the neglect, Tagg "suffered an avoidable fall and resulting hip fracture which required surgery, which sequela accelerated the deterioration of her health beyond that caused by the normal aging process."

In addition, the Capistrano defendants did not provide sufficient staffing and many of the staff members were not properly trained or qualified to care for the elderly, including Tagg. They "wrongfully withheld necessary care and services from [Tagg] in violation of federal and state rules, laws, and regulations governing the operations and standards of practice in skilled nursing facilities," including regulations addressing pressure sores. (Capitalization omitted.) Tagg would not have suffered injuries had there been sufficient staffing.

The second cause of action for negligent hiring and supervision alleged the Capistrano defendants negligently hired, supervised and/or retained the Facility's administrator, director

5

of nursing, certified nursing assistants, registered nurses, and licensed vocational nurses. The Capistrano defendants "knew, or should have known, that these individuals were unfit to perform their job duties . . . and that this unfitness created a high risk that serious injury would befall elderly and infirm residents" such as Tagg.

Tagg died on October 16, 2021. On December 8 the trial court granted the ex parte application filed by Tagg's attorney to appoint Tagg's son Brian Tagg to prosecute the lawsuit as Tagg's successor in interest.[3]

C.     *The Capistrano Defendants' Motion To Compel Arbitration*

On December 1, 2021 the Capistrano defendants filed a petition to compel arbitration.[4] They argued that Tagg executed the agreement during her stay at the Facility and is presumed to

---

[3]     For ease of reference, we refer to the plaintiff and respondent as Tagg.

[4]     The Capistrano defendants styled their motion as a petition to compel arbitration. (See Code Civ. Proc., § 1281.2 [referring to a request to enforce an arbitration agreement as a "petition of a party to an arbitration agreement"].) However, because the pleading was filed in an existing lawsuit, we treat it as a motion to compel arbitration. (See *Villareal v. LAD-T, LLC* (2022) 84 Cal.App.5th 446, 453 [treating petition to compel arbitration filed in existing action as motion to compel arbitration]; *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 772 ["There is an 'analytic distinction' between a motion (or petition) to compel arbitration filed within an existing action, as here, and a petition to compel arbitration that commences an independent action."].).

have read and understood its terms, which required arbitration of her claims (as stated in article 2 of the agreement).

In her opposition, Tagg argued that by signing the notice provision for medical malpractice disputes under article 1, and not signing the notice provision applicable to "claims other than a claim for medical malpractice" (capitalization omitted), she only agreed to arbitrate her medical malpractice claims. Tagg asserted that "[i]f only one signature were required to assent to both portions of the agreement, the agreement would so indicate." Tagg also argued her elder abuse cause of action was not for medical malpractice, and therefore, it was not covered by article 1 of the arbitration agreement. Tagg asserted her negligent hiring and supervision cause of action likewise did not involve medical malpractice.[5]

In their reply brief, the Capistrano defendants argued Tagg "did not cross out or strike out any portion of the two arbitration agreements and it is clear from the plain language of the Agreements that the intent was for all claims to be subject to arbitration." Further, articles 2 and 4 of the agreement made clear that all disputes were subject to arbitration. The

---

[5]     Tagg also argued that if the court were to compel arbitration, it should require the Capistrano defendants to pay all arbitration costs. In a supporting declaration, Brian Tagg stated his mother "died penniless and her estate has no money to pay for an arbitration." The Capistrano defendants responded in their reply that Tagg had a contractual obligation under the agreement to share the arbitration costs. Further, because Tagg's attorney was paying her litigation costs, the attorney would also pay her arbitration costs. Payment of arbitration costs is not at issue on appeal.

7

Capistrano defendants added that at a minimum Tagg's negligent hiring and supervision claim was subject to arbitration.

D.    *The Trial Court's Ruling*

On March 21, 2022 the trial court held a hearing on the Capistrano defendants' motion to compel arbitration.  The court's written tentative ruling was to deny the motion as to the elder abuse cause of action but to grant it as to the negligent hiring and supervision cause of action, with the arbitrator to decide what portion of the negligent hiring and supervision cause of action was for medical malpractice.  At the hearing, the Capistrano defendants' attorney argued that article 4 of the agreement made clear the agreement applied to all disputes except those pertaining to collections and evictions.  Therefore, unless the court were to strike article 4, there was enough in the agreement to "bootstrap [any] claims other than just medical malpractice."  In response, Tagg's attorney argued the agreement was "pretty clear and unambiguous" that Tagg agreed only to arbitrate her medical malpractice claims (and not her elder abuse cause of action).

The trial court adopted its tentative ruling and denied the Capistrano defendants' motion to compel arbitration of Tagg's elder abuse cause of action.  Pursuant to Tagg's request, the court dismissed the cause of action for negligent hiring and supervision without prejudice.  The court did not explain its reasoning in its tentative ruling or minute order.

The Capistrano defendants timely appealed.

**DISCUSSION**

A.   *Governing Law and Standard of Review*

Code of Civil Procedure section 1281.2[6] requires the trial court to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate such controversy . . . if it determines that an agreement to arbitrate the controversy exists."  Accordingly, the threshold question is whether there is an agreement to arbitrate.  (*American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 233 ["arbitration is a matter of contract"]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (U.S.), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*) [""'A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'""]; *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1120 (*Trinity*) ["As the language of this section makes plain, the threshold question presented by every petition to compel arbitration is whether an agreement to arbitrate exists."].)[7]

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate a dispute exists, and the party opposing arbitration bears the burden of proving unconscionability or other defenses. (*Pinnacle, supra*, 55 Cal.4th at p. 236; *Rosenthal v. Great Western*

---

[6]   Further undesignated statutory references are to the Code of Civil Procedure.

[7]   The agreement states it is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.).

*Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.) "To carry this burden of persuasion the moving party must first produce 'prima facie evidence of a written agreement to arbitrate the controversy.' [Citations.] 'If the moving party meets its initial prima facie burden and the opposing party disputes the agreement, then . . . the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement.' [Citations.] If the opposing party produces such evidence, then 'the moving party must establish with admissible evidence a valid arbitration agreement between the parties.' [Citation.] Despite the shifting burden of production, '[t]he burden of proving the agreement by a preponderance of the evidence remains with the moving party.'" (*Trinity, supra*, 78 Cal.App.5th at p. 1120; accord, *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 (*Gamboa*).)

"Absent conflicting evidence, we review de novo the trial court's interpretation of an arbitration agreement, including the determination whether it is enforceable on unconscionability grounds." (*Trinity, supra*, 78 Cal.App.5th at p. 1120; accord, *Villareal v. LAD-T, LLC* (2022) 84 Cal.App.5th 446, 456 ["[W]e independently review the order if the trial court's denial rests solely on a question of law."].) "Where the trial court's ruling is based on a finding of fact, we review the decision for substantial evidence." (*Trinity*, at p. 1121; accord, *Villareal*, at p. 456.)

However, where "'the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding was erroneous as a matter of law.' [Citations.] "'Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached'

10

and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'"'" (*Trinity, supra*, 78 Cal.App.5th at p.1121; accord, *Evenskaas v. California Transit, Inc.* (2022) 81 Cal.App.5th 285, 292; *Gamboa, supra*, 72 Cal.App.5th at p. 166.) "'"[U]nless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [party's] evidence lacks sufficient weight and credibility to carry the burden of proof.'"'" (*Gamboa*, at p. 166; accord, *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067; *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979.)

B.     *The Evidence Does Not Compel a Finding That Tagg Agreed To Arbitrate Her Elder Abuse Cause of Action*

Although it is undisputed that Tagg signed the arbitration agreement (unlike the factual dispute in *Trinity, supra*, 78 Cal.App.5th at pages 1115 to 1116 over whether the employee electronically signed the arbitration agreement), there is a factual dispute as to whether Tagg agreed to arbitrate her elder abuse cause of action. Because the trial court impliedly found the Capistrano defendants did not meet their burden to prove the existence of an agreement to arbitrate the elder abuse cause of action, we consider whether the Capistrano defendants' evidence was uncontradicted and unimpeached and of such a character that there was "no room for a judicial determination that it was insufficient to support a finding." (*Trinity*, at p. 1121.) It was not.

The Capistrano defendants contend Tagg's single signature constituted an agreement to arbitrate all her claims arising from her stay at the Facility. They point out that Tagg did not cross

11

out article 2 or article 4, which required her to arbitrate "any dispute," nor did the agreement specify that a party would only be bound by an agreement to arbitrate all claims if the party signed both notice provisions. In making this argument, the Capistrano defendants rely on *Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, in which the employer and employee signed below the final paragraph of a stand-alone arbitration agreement certifying that they understood and agreed to be legally bound by "all of the terms of this agreement," and the employee certified he agreed only to pursue claims against the company through the arbitration process. (*Id.* at p. 965, capitalization and boldface omitted.) However, the parties did not initial the sentence in the third paragraph of the agreement that stated, "'In agreeing to arbitration, both Employer and Employee explicitly waive their respective rights to trial by jury.'" (*Ibid.*, boldface omitted.) The Court of Appeal concluded the employee had assented to arbitration of his claims despite his failure to initial the jury waiver provision because he signed the certification paragraph at the end of the arbitration agreement stating he agreed to all terms of the agreement, which included the jury waiver provision he had not initialed. (*Id.* at pp. 967-968.)

In contrast to *Martinez*, the two notice provisions at the end of the agreement make clear the signatory is agreeing to arbitration in lieu of a jury or court trial, with the first explicitly referencing medical malpractice claims and the second referencing all other claims. Tagg made her intent known by signing only the provision that applied to medical malpractice claims as set forth in article 1. The Capistrano defendants did not present any evidence that compels a contrary finding.

12

Moreover, the arbitration agreement complies with the mandates of section 1295 applicable to contracts for medical services that contain arbitration agreements. Section 1295, subdivision (a), provides that the first article of any contract requiring arbitration of medical malpractice disputes "shall have" the following language: "'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.'" Section 1295, subdivision (b), likewise requires that the contract contain a disclosure for arbitration of medical malpractice disputes above the signature line in boldface red capitalized print that reads, "NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT"].)

The arbitration agreement complies with section 1295, subdivision (a), by including the mandated language in article 1 of the agreement (applicable only to medical malpractice disputes), and providing a separate provision (article 2) that addresses arbitration of other claims, including for general negligence, intentional tort, and statutory causes of action. ~(AA

13

37)~ And consistent with section 1295, subdivision (b), there are separate notice provisions and signature lines for arbitration of medical malpractice claims and for claims other than medical malpractice, with the medical malpractice notice using the required language in section 1295, subdivision (b), and the notice provision for other claims using different language. For example, the medical malpractice notice refers to "neutral arbitration," but the notice provision for other claims refers only to "arbitration" and contains a class action waiver. ~(AA 38)~

The arbitration agreement's inclusion of separate disclosure and notice provisions for medical malpractice claims makes clear that the Capistrano defendants, in drafting the agreement, intended to have residents separately agree to arbitration of medical malpractice disputes (using the statutory language) and arbitration of other disputes (using other language). It is disingenuous for the Capistrano defendants now to argue that Tagg's signature below the notice of arbitration of medical malpractice claims constitutes an agreement to arbitrate her other claims. Moreover, as the Capistrano defendants acknowledged at oral argument, their position logically would mean that had Tagg signed under only the second notice (for arbitration for all claims other than medical malpractice), Tagg's signature would constitute her agreement to arbitrate all claims, including for medical malpractice. But such a result would violate section 1295, subdivision (b).

The two unpublished federal cases relied on by the Capistrano defendants are likewise distinguishable because in each case the plaintiff signed an agreement containing an arbitration provision but failed to initial the specific arbitration

14

clause within the agreement.[8]  In *Burgoon v. Narconon of Northern California* (N.D.Cal., Jan. 15, 2016, No. 15-cv-011381-EMC) 2016 U.S.Dist. Lexis 5489, a drug treatment patient signed an admission agreement, but he did not initial the arbitration provision within the agreement.  (*Id.* at p. *5.)  The court granted the defendant's motion to compel arbitration, finding the patient's failure to initial the arbitration provision was insufficient to show he "did not enter into a contract given his signature at the end of the document."  (*Id.* at p. *24.)  Similarly, in *Hartung v. J.D. Byrider, Inc.* (E.D.Cal., Oct. 16, 2008, No. 1:08-cv-00960-AWI-GSA) 2008 U.S.Dist. Lexis 86972, a car buyer signed a retail installment contract but did not initial the arbitration provision within the contract.  (*Id.* at p. *4.)  The court found the buyer assented to the arbitration provision because the contract "included a notice just above [p]laintiff's signature in bold-faced, capitalized typeface alerting her that the [c]ontract contained an arbitration provision" and she initialed a portion of the agreement "indicating her understanding that the [c]ontract contained an arbitration provision."  (*Id.* at p. *18.)[9]

---

[8]  Unpublished federal cases may be cited as persuasive authority.  (*Martinez, supra*, 51 Cal.App.4th 962, 968, fn. 1; *Haligwoski v. Superior Court* (2011) 200 Cal.App.4th 983, 990, fn. 4.)

[9]  The Capistrano defendants also rely on *Anderson v. Pitney Bowes, Inc.* (N.D.Cal., May 4, 2005, No. C 04-4808 SBA) 2005 U.S.Dist. LEXIS 37662, in which the employee signed on the signature line at the end of the arbitration agreement but did not initial the paragraph acknowledging he was giving up his right to a jury trial.  (*Id.* at pp. *3-*4.)  However, the court granted the employer's motion to compel arbitration based only on a

15

The Capistrano defendants' reliance on *Basura v. U.S. Home Corp.* (2002) 98 Cal.App.4th 1205 is similarly misplaced. In *Basura*, a home builder and 48 buyers signed form sales agreements, each of which included an arbitration clause. Each buyer initialed the arbitration clause, but the builder failed to initial the arbitration clause in 28 of the contracts. (*Id.* at pp. 1208-1209.) The Court of Appeal reversed the denial of the petition to compel arbitration and directed the trial court to conduct an evidentiary hearing on whether the builder intended to agree to arbitration as to all 48 buyers notwithstanding its failure to initial the arbitration provisions in 28 of the contracts. (*Id.* at p. 1216.) Unlike *Basura*, where the builder's agreement to the arbitration clauses in 20 of the identical form agreements suggested "its failure to initial the arbitration clauses in each and every contract was simply due to clerical error" (*ibid*.), the Capistrano defendants presented no evidence of Tagg's intent to arbitrate claims other than for medical malpractice.[10]

---

delegation clause in the arbitration agreement that "evidences a clear intent that an arbitrator would decide the significance, if any, of Plaintiff's failure to initial one of the Agreement's paragraphs." (*Id.* at p. *3.)

[10] *Grubb & Ellis Co. v. Bello* (1993) 19 Cal.App.4th 231 is likewise inapposite. The court in *Grubb* considered whether a real estate broker could compel a seller to arbitrate the broker's fees claim where only the seller initialed the arbitration provisions in the listing agreement. (*Id.* at pp. 235-236.) The court concluded that section 1298, governing arbitration provisions in real estate contracts, did not require a mutual obligation to arbitrate, and thus the broker's lack of assent did not bar enforcement of the arbitration agreement. (*Id.* at p. 239.) This case does not involve section 1298 or the legal question

Finally, the Capistrano defendants contend Tagg's elder abuse cause of action sounds in medical malpractice, and thus is subject to arbitration. But they did not make this argument in their briefs or at the hearing in the trial court. Because the Capistrano defendants did not raise this issue in the trial court, they have forfeited the argument. (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 866 ["'[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.'"]; *Gamboa, supra,* 72 Cal.App.5th at p. 170 [argument for enforcement of arbitration agreement forfeited because not raised in trial court].)

---

whether mutual assent is required. Further, *Grubb* has been consistently criticized by later courts. (See *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal. App. 4th 83, 90-91 [disagreeing with *Grubb's* holding that mutuality of arbitration was not required]; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal. App. 4th 1519, 1539 ["To the extent *Grubb & Ellis* suggests mutuality of arbitral obligation is not required, we question the court's analysis of this issue, which has never been relied upon by other courts and is hard to reconcile with other pertinent cases requiring mutuality of the arbitral obligation."].)

## DISPOSITION

The order denying the Capistrano defendants' motion to compel arbitration is affirmed.  Anita Tagg, through her successor-in-interest Brian Tagg, is entitled to recover costs on appeal.


FEUER, J.

We concur:


PERLUSS, P. J.


HOWARD, J.*

---

\*      Judge of the Marin County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.